## AUSTIN LAKE ESTATES RECREATION CLUB, INC., et al., Appellants,

### v.

### Robert S. GILLIAM et al., Appellees.

### No. 12015.

Court of Civil Appeals of Texas, Austin.

April 4, 1973.

Rehearing Denied April 25, 1973.

Sam Bass, Jr., Freeport, for appellants.

Thomas B. Cowden, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellees.

SHANNON, Justice.

This appeal concerns a declaratory judgment suit filed by appellants[1] against appellees[2] in the district court of Travis County to quiet and try title to a lot situated on Lake Austin in Travis County. Upon trial to a jury, judgment was entered for appellees based upon the answers of the jury to special issues and upon facts heard by the court, but not submitted to the jury. We will affirm that judgment.

Review of this case has been made more difficult by the failure of appellants to discharge their burden to supply in their brief a general statement of facts covering the entire litigation, supported by record references. Such a statement would have assisted the Court in obtaining an overall view of the appeal.

The facts necessary to understand and decide this appeal follow. Appellant, Austin Lake Estates Recreation Club, Inc.,[3] was organized and chartered in 1959 for the purpose of operating and maintaining a "recreation club" and restaurant. In October of 1959, the club acquired by deed from Austin Lake Estates, Inc., title to the property in question, Lot No. 4 in Cebar Ranch, Lakeview Acres, which is situated on the shore of Lake Austin, and upon which a clubhouse and other improvements were built. This conveyance was subject to all "rights and privileges" of the owners of lots in Austin Lake Estates, Section one, two and three, and Austin Lake Estates, Inc., grantor, reserved the right to grant the same "rights and privileges" to all future lot purchasers out of those existing subdivisions and future subdivisions in an adjoining 826.16 acres. The deed to the club was also subject to those easements of record previously granted Austin Lake Estates, Inc., by Charles A. Duffy and wife, Edna J. Duffy, and their predecessors in title.

Among those "rights and privileges" previously granted to and enjoyed by the lot owners was their due to use Lot No. 4 for having picnics, for swimming, and for launching and landing boats. Also, the lot owners had an easement of ingress and egress over Lot No. 4 in order to enjoy

---

1. Appellants are Austin Lake Estates Recreation Club, Inc., Ila Belle Mayberry, J. W. Moore and wife, Hazel Moore. Wroe Owens was a party plaintiff, but did not perfect an appeal.

2. Robert S. Gilliam, Vivian Worden, John Rose, and Marlene Anglin in their individual capacities, and I. K. Farley, Emmett R. Fry, Dillard L. Vickers, and Charles C. Petterson. individually and as trustees.

3. In this opinion, Appellant, Austin Lake Estates Recreation Club, Inc., will usually be referred to as the "club."

their use of the lot. Such arrangements in subdivisions near lakes and waterways are not unusual and serve as an inducement for customers to buy lots away from the shore of the lake. In such instances the developer usually sets aside some water front area or lot designating it as a park or reserve so that all buyers in the subdivision will be assured of frontage.

During November of 1966, the individual appellants acquired large blocks of stock in the club, and in December of 1966, a new set of by-laws was adopted for the club which required one vote for each share of stock. Before that date the practice had been for members of the club to vote their stock on a one vote per family basis regardless of the number of shares owned by each family.

In November of 1968, and June of 1969, at the board of directors meetings, Wroe Owens, J. W. Moore and Ila Belle Mayberry proposed to sell a part of Lot No. 4. Despite the fact that the board of directors did not vote to authorize its sale, a part of Lot No. 4 was listed for sale by J. W. Moore with a realtor.

In January, 1969, J. W. Moore, then president of the club, without approval from the board of directors, leased the clubhouse, the swimming pool, and most of the land of Lot No. 4, to Bruce Parmeley for the purpose of his operating and maintaining a private club. Under the arrangement with Parmeley, lot owners were not permitted to use the clubhouse and other facilities on Lot No. 4 unless they paid a fee and joined his private club. A provision in that lease also provided for the erection of a fence around the premises which would have precluded lot owners from launching their boats from Lot No. 4.

Area lot owners, being of the opinion that their right to use and enjoy Lot No. 4 was violated by the Parmeley lease, presented a resolution to a specially called board of directors meeting of the club on June 23, 1969. All directors were present for the called meeting except one. Director Vivian Worden proposed a resolution that the westernmost 303 feet of Lot No. 4 be held in trust for the lot owners and all future lot owners in the Austin Lake Estates subdivision, and that this part of the lot be conveyed to certain named trustees for those purposes. The resolution was then submitted to the board of directors for a vote, and it passed by a vote of three to two. During the same evening, the Vice-President, Robert Gilliam, for the club, conveyed by quitclaim deed the westernmost 303 feet of Lot No. 4 to the named trustees, and that deed was recorded the next day in the office of the Clerk of Travis County.

In August, appellants filed the suit presently pending before this Court. As ground for setting aside the quitclaim deed to the trustees, appellants pleaded that on June 23, 1969, the board of directors voted illegally and without authority to convey the portion of Lot No. 4 to the named trustees, and that on August 11, 1969, the board of directors by resolution "rescinded, cancelled and officially declared" the trust and quitclaim deed "to be void *ab initio.*"

In response to appellants' petition, appellees filed a cross-petition praying among other things, that Lot No. 4 be declared permanently impressed with an easement for ingress and egress in favor of the present and future lot owners in the Austin Lake Estates subdivisions, and that the shares of stock in the club acquired by Ila Belle Mayberry, J. W. Moore, Hazel Moore, and Wroe Owens be cancelled.

The case was submitted to a jury upon special issues. By its answers the jury found that J. W. Moore, Hazel Moore, Ila Belle Mayberry, and Wroe Owens entered into a combination to acquire controlling stock interest in the club by changing the by-laws of the club from one vote for each shareholding family unit to one vote for each share of stock in order to exclude the minority shareholders from effective participation in the business affairs of the club. The jury further found that the in-

dividual appellants entered into a combination to control all or a portion of Lot No. 4 and to restrict the minority shareholders of the club of their right of ingress and egress across that lot. In addition, the jury answered that the shares in the club held by Wroe Owens were acquired without any consideration being received by the club. With respect to the shares of J. W. Moore and Hazel Moore, the jury answered that the club did not receive full consideration for the issuance of those shares.

The judgment recognized the existence of a perpetual easement for ingress and egress in Lot No. 4 to the waters of Lake Austin in favor of the lot owners in the Austin Lake Estates subdivision and the present and future owners of lots sub-divided out of the original 862.16 acre tract adjoining that subdivision. In response to undisputed testimony from a surveyor given after the court had received the jury's verdict, the court in the judgment reformed the legal description contained in the quitclaim deed. Also by the terms of the judgment, the shares of stock of Wroe Owens, J. W. Moore, and Hazel Moore were cancelled.

Appellants attack the judment by thirteen points of error, the principal contention being that the court erred in holding as a matter of law that the quitclaim deed was an irrevocable trust.

An examination of the quitclaim deed shows that the land was conveyed to the trustees, "their heirs and assigns forever, so that neither said corporation nor its successors and assigns shall have any right or title to or interest in such property, premises or appurtenances or any part thereof at any time hereafter."

 Tex. Trust Act. Vernon's Ann.Civ. St. Art. 7425b–41, specifically provides that every trust shall be revocable unless expressly made irrevocable. Appellants point will be overruled as the quitclaim deed by its terms, referred to above, created an ir-revocable trust. Contrary to appellants' argument, Art. 7425b–41 does not require that the instrument contain specific words of art to create an irrevocable trust, but rather that it reflect the trustor's intent to make the trust irrevocable. See McCauley v. Simmer, 336 S.W.2d 872 (Tex.Civ.App. 1960, writ dismissed).

Appellants next complain by two points of error that the court erred in holding as a matter of law that the trustees paid "a sufficient consideration" for the quitclaim deed, and in holding that the quitclaim deed was delivered to the trustees.

 As no cash consideration was received by the club for the deed, appellants argue that it fails as a conveyance of the property. Gilliam testified that the deed was given in consideration for the trustees holding and protecting the property for the lot owners. Aside from Gilliam's proof, there exists another reason for rejecting appellants' argument, that being the settled proposition that lack of consideration is not ground for voiding an executed deed in the absence of a showing of fraud or undue influence. Burgess v. Hatton, 209 S. W.2d 999 (Tex.Civ.App.1948, writ ref'd).

 Appellants claim that the failure of Gilliam physically to deliver the quitclaim deed to the trustees rendered it inoperative. Three of the four trustees read the original or a copy of the deed shortly after it was executed. The fourth trustee recalled seeing the deed, but failed to remember the exact time. On the day following its execution Gilliam filed the deed of record in the office of the county clerk.

 The question of delivery of a deed is one of intention of the grantor. Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661 (Tex.1917), Thornton v. Rains, 157 Tex. 65, 299 S.W.2d 287 (1957). Upon recordation of a deed the presumption is that the grantor did so to effect the deed as a conveyance, and no further act of delivery

is required. Ford v. Hackel, 124 Tex. 402, 77 S.W.2d 1043 (1935), Vannerberg v. Anderson, 146 Tex. 302, 206 S.W.2d 217 (1947).

In point of error five appellants complain of the court permitting the testimony to be reopened and the amendment of the property description in the quitclaim deed by judgment. The original description in the deed resulted from the efforts of Gilliam, who was not a surveyor, to measure off the "westernmost 303 feet of Lot 4. . . ." with a metal tape. Those efforts resulted in a legal description which conveyed a portion of the clubhouse, a result not intended by the grantor nor the grantees. The court permitted the surveyor, who had prepared a surveyor's description of the property lying west of the clubhouse, to be recalled, and present the description prepared by him which approximated that in the quitclaim deed, but excluded the clubhouse.

Texas Rules of Civil Procedure 270, empowers the trial court to permit additional non-controversial evidence to be offered where it clearly appears necessary to the due administration of justice. In this instance, we are convinced that the court properly permitted the evidence to be offered since a misdescription of land in a deed, as a result of a mutual mistake, may be reformed to transfer the land intended to have been conveyed. Morrow v. Shotwell, 477 S.W.2d 538, 541 (Tex.1972).

By their point of error number six appellants contend that the court erred in declaring that there existed on Lot 4 a perpetual easement for ingress and egress to the waters of Lake Austin, for the reason, appellants say, that the original grantors of the easement, Charles A. Duffy and wife, Edna Duffy, gave only an easement upon *all roads* over Lot 4.

An examination of the original easement granted by the Duffys dated November 10, 1948, shows that instrument did not restrict the right of ingress and egress across Lot No. 4 to roads. That easement reads as follows:

"That we, Chas. A. Duffy, and wife, Edna Duffy, owners of Lots nos. Four (4), and Fourteen (14) of Cebar Ranch, Lakeview Acres, as shown by the plat thereof recorded in Book 5, page 43, of the Travis County Plat Records, do hereby impress said Lots Nos. Four (4) and Fourteen (14) *to the extent that they shall be used as an easement for ingress and egress to the Lake front.*"

In June of 1960, Charles A. Duffy and wife, Edna Duffy, executed an instrument which, in effect, purported to revoke the original easement quoted above. The attempted revocation of an express easement of record was ineffective without the consent of those persons entitled to the easement. See 25 Am.Jur.2d 506, Easements and Licenses § 101.

By their seventh point of error, appellants claim that the court erred in holding, as a matter of law, that the act of Robert S. Gilliam in signing the deed to the trustees was the valid act of the club.

Article 3, paragraph 6 of the By-Laws of the club provides that " . . . in the absence of the President or in the event of his inability or *refusal* to act, the Vice-President . . . shall perform the duties of the President." (Emphasis added) Appellants' principal argument under this point is that, at the June 23rd meeting, J. W. Moore, president did *not* refuse to call a vote on the resolution authorizing the conveyance to the trustees.

The record shows that Moore did refuse to call a vote on the resolution. His stated reason for the refusal was that he wanted to obtain advice of counsel before he proceeded. In our opinion, regardless of his motives, Moore refused "to act", and under the By-Laws, Gilliam, the Vice-President, properly assumed the chair, and called for a vote on the resolution.

Appellants complain by their points eight and nine that the court erred in cancelling the 28 shares issued to J. W. Moore and the 26 shares issued to Hazel Moore, for the reason that the answers to the jury were "not supported by the evidence."

To special issues six and seven the jury answered, "We do".

"SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the 28 shares of stock (Nos. 366 through 393) were issued to J. W. Moore on November 16, 1966, without the full amount of the consideration for such shares having been paid to AL-ERC, Inc.?

Answer 'We do' or 'We do not'."

"SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that the 26 shares of stock (Nos. 394 through 419) were issued to Hazel Moore on November 16, 1966, without the full amount of the consideration for such shares having been paid to ALERC, Inc.?

Answer 'We do' or 'We do not'."

In connection with terms used in special issues six and seven the court included the following definition in the charge:

"The term 'consideration received by ALERC, Inc.' or 'consideration for such shares having been paid to ALERC, Inc.' means money paid to or on behalf of the corporation, labor done for the corporation or property actually received by the corporation."

The club charter set the par value of each share of stock at $10.00 each. On November 16, 1966, the Moores acquired a total of fifty four shares of stock in exchange for the cancellation of two notes of the club totalling $470.00. Moore claimed

that in addition to the cancellation of the notes, the issuance of the shares of stock was, in part, a reimbursement for petty cash advances for postage and envelopes. Dillard Vickers, treasurer in November of 1966, could not recall that the issuance of the shares of stock to the Moores was reimbursement for cash advances.

Tex.Bus.Corp.Act.Ann. Art. 2.16, V.A.T.S., provides in part that "Shares may not be issued until the *full* amount of the consideration, fixed as provided by law, has been paid." (Emphasis added) Assuming, without deciding, that the exchange of stock for the cancellation of the note is in compliance with Art. 2.16, we are of the opinion that the answers of the jury find support in other evidence.

Points of error ten and eleven are frivolous. The complaint voiced by those points is that there is no jury verdict that J. W. Moore and Hazel Moore did not fully pay for shares of the stock in Austin Lake Estates Recreation Club, Inc. As may be seen by an examination of special issues five and six, the court, for convenience, employed the abbreviation, "ALERC, Inc." If appellants were of the opinion that the members of the jury could have been somehow misled, they should have objected to the abbreviation being employed in the charge.

Appellants' point of error one is that the court erred "in overruling plaintiff's, (sic) cross defendant's (sic) motion to strike and set aside the jury's findings on the special issues". After the restatement of the point in the brief, five blank pages follow. As point of error one is not supported with argument or authority, it will be considered waived. State Bar of Texas, Appellate Procedure in Texas, § 12.4 [6] (1964).

Appellants cite no authority to support their points of error twelve and thirteen, and the discussion under those points does

no more than restate the points, observing that the cancellation of the shares of stock of the club in the name of the Moores is "unconstitutional" in that such acts are tantamount to a "taking of property without just compensation". As these points are not supported by argument or authority, they are waived. Doss v. Blackstock, 466 S.W.2d 59 (Tex.Civ.App.1971, writ ref. n.r.e.).

The judgment is affirmed.