Paige B. BAYOUD, Appellant,

v.

H.R. NASSOUR, Jr. et al., Appellees.

No. 11–84–127–CV.

Court of Appeals of Texas,
Eastland.

Feb. 28, 1985.
Rehearing Denied April 11, 1985.

John E. Rapier, Rapier & Associates, Dallas, for appellant.

Waller M. Collie, Jr. and R.L. McSpedden, Collie, McSpedden & Roberts, Dallas, for appellees.

RALEIGH BROWN, Justice.

This is a suit to dissolve a corporation. Dr. Paige Bayoud sued Dr. H.R. Nassour, Jr. seeking dissolution of Dallas Medical Center, Inc., and requesting that a receiver be appointed to distribute the corporate assets. Upon its findings of fact and conclusions of law, the trial court entered judgment appointing a receiver, canceling 554 of the 900 shares of stock issued to Bayoud and ordering an unequal distribution of the assets after sale. Bayoud appeals. We reverse and render in part, and affirm in part.

Nassour, in 1955, purchased approximately 18 acres of land on Buckner Boulevard in Dallas, Texas, for $36,000. He paid $10,000 cash as a down payment. The balance was reflected in a promissory note signed solely by Nassour. Bayoud and Nassour then sought the assistance of Attorney Richard Mackay in developing a plan for the two medical doctors to establish a practice together. On advice of Mackay, the doctors established a corporation, Dallas Medical Center, Inc. (DMC). Approximately 9.282 acres of the land owned by Nassour was released by the lienholder upon Nassour paying $2,000 and Bayoud paying $5,000 to the lienholder. In 1956, Nassour conveyed the 9.282 acres to DMC. Nine hundred shares of DMC stock were issued to each of the doctors and one

share to Mackay, Mackay eventually assigning his share to Nassour. The 1801 shares of stock were issued and the land was conveyed to DMC all before the filing of DMC's charter. Soon thereafter, the doctors began a litigation struggle that is still ongoing.[1] DMC is still in corporate existence and the land is undeveloped.

Bayoud urges three points of error, and Nassour urges three cross-points.

Bayoud's first point of error urges that the trial court erred in voiding 554 of his 900 shares because Nassour's attempt at having them voided was barred by the statute of limitations. We disagree. Nassour's defense asserted that the issuance of the 900 shares was void because no consideration was ever received for them. The trial court concluded that the claim was not barred by limitations. The court, in *Hennigan v. Heights Savings Association*, 576 S.W.2d 126, 130 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.), considering the application of the statute of limitations as to defensive matters, stated:

> The rule in this state is that where the subject matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of setoff, and the statutes of limitation are available to the plaintiff in respect to such a defense. On the other hand, if the subject matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate immediately as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply. *Morris-Buick Co. v. Davis*, 127 Tex. 41, 91 S.W.2d 313 (1936).

The defense Nassour urges would void all the shares of stock issued to Bayoud. Such defense would operate as a negation of Bayoud's right to recover. If he were not a shareholder, he could not sue for appointment of a receiver or distribution of the assets or a dissolution of the corporation. Considering the nature of the defense, we hold that it was not barred by limitations. The first point is overruled.

Bayoud, in two points of error, challenges the trial court's action in voiding 554 of his shares in DMC. Nassour argues that since Bayoud failed to fully pay for his shares of stock, the court correctly voided shares issued without full considerations being paid.

The trial court made the following findings of fact:

\* \* \* \* \* \*

3. On May 9, 1956, Bayoud paid $5,000.00 (PX 13) and Nassour about $2,000.00 to the lien holders on the 18-acre tract to obtain a release of their lien on a 9.282-acre tract out of the 18 acres (DX 8).

4. The $5,000.00 paid by Bayoud was not a loan to Nassour but rather was an investment by Bayoud in the 9.282 acres.

5. On May 9, 1956, Nassour deeded the 9.282 acres to Dallas Medical Center, Inc. ("DMC"). (PX 8)

\* \* \* \* \* \*

7. Although DMC did not come into existence by the issuance of its charter until 7 days after the deed of the 9.282 acres to DMC, Nassour and Bayour intended on and after May 16, 1956, that the 9.282 acres be conveyed to DMC in accordance with the deed of May 9, 1956.

8. The 9.282 acres was effectively conveyed to DMC, which became the owner of the 9.282 acres on May 16, 1956.

9. On April 16, 1956, 1801 shares of common stock in DMC were issued, 900 shares to Nassour (DX 2), 900 shares to Bayoud (DX 4), and 1 share to Mackay (DX 3).

10. Although DMC did not come into existence by the issuance of its charter until 30 days after the issuance of stock, Nassour, Bayoud and Mackay intended on and after May 16, 1956, that the DMC

1. See *Bayoud v. Nassour*, 353 S.W.2d 331 (Tex. Civ.App.—Texarkana 1961, writ ref'd n.r.e.).

stock be issued in accordance with the certificates dated April 16, 1956.

\* \* \* \* \* \*

17. The fair market value of the 9.282 acres on May 9, 1956, was $18,000.00, of which amount Nassour had paid $13,-000.00 and Bayoud had paid $5,000.00.

18. On May 16, 1956, Nassour and Bayoud intended and agreed that Bayoud would pay Nassour an additional $4,000.00, so that the effect of the conveyance of the 9.282 acres to DMC would have been that Nassour and Bayoud had each contributed $9,000.00 in property to DMC in exchange for 900 shares of DMC stock.

19. Bayoud never paid Nassour such $4,000.00. . . .

TEX.BUS.CORP.ACT ANN. art. 2.16 (Vernon 1980) provides:

A. The consideration paid for the issuance of shares shall consist of money paid, labor done, or property actually received. *Shares may not be issued until the full amount of the consideration, fixed as provided by law, has been paid.* When such consideration shall have been paid to the corporation or to a corporation of which all of the outstanding shares of each class are owned by the corporation, the shares shall be deemed to have been issued and the subscriber or shareholder entitled to receive such issue shall be a shareholder with respect to such shares, and the shares shall be considered fully paid and non-assessable. (Emphasis ours)

\* \* \* \* \* \*

C. In the absence of fraud in the transaction, the judgment of the board of directors or the shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive.

The Articles of Incorporation of DMC and supporting affidavit *signed and sworn to by Nassour* state: "The amount of the capital stock is $18,010, divided into 1801 shares, each of par value of $10, all of which capital stock has been in good faith subscribed *and 100% of which has been paid in property.*" (Emphasis ours)

There is no finding that the property actually received by DMC was less than the full amount of the consideration to be paid for the issuance of the stock, nor is there any showing of any fraud in the transaction.

█ Article 2.16 and TEX.CONST. art. XII, sec. 6,[2] which require the full amount of the consideration to be paid before the issuance of stock, are designed to protect the public and bona fide purchasers of stock against stock manipulation. In the instant case, the consideration was fully paid to the corporation. There was, therefore, no violation of either the constitutional provision or the statute. The trial court erred in voiding 554 shares of Bayoud's stock. We are not required to determine the issue of whether Bayoud may be obligated to Nassour as to the stock issued.[3]

Nassour urges three cross-points. First, he argues that the trial court erred in voiding only a portion of Bayoud's stock. He contends that since Bayoud did not pay the full amount of consideration recited, all of his stock was invalidly issued. He cites *Austin Lake Estates Recreation Club, Inc. v. Gilliam,* 493 S.W.2d 343 (Tex.Civ. App.—Austin 1973, writ ref'd n.r.e.), in support of his position. In such case, the court merely upheld the cancellation of all the shares issued to a married couple because the evidence supported a jury finding that the shares were issued without the full amount of consideration having been paid to the corporation. In the instant case, full consideration had been paid to the

---

2. Sec. 6. No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void.

3. Bayoud tendered payment of the $4,000 in his second amended answer to counterclaim defendant; however, the tender was to DMC, and the obligation, if any, was owed to Nassour individually.

corporation for the stock issued to Bayoud. The first cross-point is overruled.

Next, Nassour contends that the trial court erred: (1) by canceling the one share of stock issued to Mackay; and (2) in appointing a receiver. Each of these complaints are raised for the first time on appeal. They are therefore waived. *West Texas Utilities Company v. Irvin*, 336 S.W.2d 609 (Tex.1960).

That portion of the trial court's judgment which voids 556 shares of stock owned by Bayoud in Dallas Medical Center, Inc. and directs the receiver to distribute the proceeds from the sale of DMC assets in an unequal manner is reversed, and judgment is rendered that Bayoud is the owner of 900 shares of stock in Dallas Medical Center, Inc.; the receiver is directed to distribute the proceeds from the sale of DMC assets in an equal manner; and in all other matters the judgment of the trial court is affirmed.