



## MEMORANDUM OPINION

No. 04-11-00659-CV

Antonio M. **VELA** Jr.,
Appellant

v.

**GRC LAND HOLDINGS, LTD.**,
Appellee

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 6,847
Honorable Jose A. Lopez, Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  August 29, 2012

AFFIRMED

This appeal arises from a suit to partition a 1,889.87 acre ranch, known as Matambo Ranch, located in Zapata County.  The trial court granted summary judgment in favor of appellee GRC Land Holdings, Ltd. and denied appellant Antonio M. Vela Jr.'s motion for summary judgment.  Antonio Jr. contends on appeal that the trial court erroneously determined that a trust settlor may deed real property to a revocable *inter vivos* trust and may subsequently amend the trust to change the beneficiaries.  We affirm the trial court's judgment.

**BACKGROUND**

The relevant facts underlying this appeal are undisputed. In 1985, Antonio M. Vela Sr. died testate, leaving a one-half undivided interest in the Matambo Ranch to his wife, Herminia C. Vela. The remaining one-half undivided interest was devised to their four children, Grizelda, Rose, Cordelia, and Antonio Jr., with each of the children holding a 12.5% undivided interest. In 1997, Herminia established the Herminia C. Vela Living Trust (the Trust) and listed as beneficiaries four heritage trusts—one for each of her four children. Six months later, she conveyed by special warranty deed (the Deed) her 50% interest in the ranch to the Trust. Following this conveyance, Herminia amended the Trust on three separate occasions. The final amendment, in 2001, removed the Antonio M. Vela, Jr. Heritage Trust as a beneficiary.

Herminia passed away in 2003. In the years following her death, Grizelda, Rose, and Cordelia formed GRC Land Holdings, Ltd. (GRC) and conveyed all of their collective interests in the Matambo Ranch to the limited partnership, including the 37.5% undivided interest from their father and the 50% undivided interest from the Trust. Thus by 2006, GRC ostensibly held 87.5% interest in the Matambo Ranch, leaving Antonio Jr. with the 12.5% interest he received from his father.

In 2008, GRC brought suit against Antonio Jr. to partition the ranch. Both parties moved for summary judgment. GRC's motion sought a declaration that the Trust, as amended, required the following partition: a 12.5% undivided interest to Antonio Jr. and an 87.5% undivided interest to GRC. Antonio Jr.'s motion sought a declaration that the Trust was made irrevocable by the Deed and, therefore, he owned an undivided 25% interest in the ranch and GRC owned the remaining 75% undivided interest. The trial court granted GRC's motion, denied Antonio Jr.'s motion, and ordered partition of the ranch.

**STANDARD OF REVIEW**

We review a traditional summary judgment de novo.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  The movant must show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Fielding*, 289 S.W.3d at 848.  To decide whether a disputed material fact issue exists, we review the evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not."  *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).  "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented."  *Id.*  We then "render the judgment [that] the trial court should have rendered."  *Id.*

**REVOCABLE *INTER VIVOS* TRUSTS**

The issue on appeal is whether Herminia could amend the Trust to remove a beneficiary after the conveyance of real property into the Trust.  Under the specific facts presented and the language of the applicable Trust and Deed, we conclude that the trial court did not err in granting summary judgment in favor of GRC.

**A.  Right to Revoke and Amend a Living Trust**

As settlor, Herminia had the authority to revoke the Trust unless it was made irrevocable by "the express terms of [either] the instrument creating it or of an instrument modifying it."  *See* TEX. PROP. CODE ANN. § 112.051(a) (West 2007); *see also Moon v. Lesikar*, 230 S.W.3d 800, 804 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  The right to revoke a trust is coupled with the right to modify or amend its terms.  *See* TEX. PROP. CODE ANN. § 112.051(b).  No

specific words of art are needed to create an irrevocable trust. *See McCauley v. Simmer*, 336 S.W.2d 872, 881 (Tex. Civ. App.—Houston 1960, writ dism'd). However, the instrument must clearly reflect the settlor's intent to make the trust irrevocable. *See Austin Lake Estates Recreation Club, Inc. v. Gilliam*, 493 S.W.2d 343, 347 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.); *see also Soefje v. Jones*, 270 S.W.3d 617, 628 (Tex. App.—San Antonio 2008, no pet.) (asserting that construing an unambiguous trust is a matter of law, and the settlor's intent in creating the trust is ascertained "from the language in the four corners of the instrument").

## B.  The Trial Court Did Not Err

Antonio Jr. does not dispute that the Trust was originally revocable. He contends, however, that the Deed executed by Herminia manifested her intent to make the trust irrevocable. We must therefore look to the express language of the Deed to determine Herminia's intent. *See* TEX. PROP. CODE ANN. § 112.051; *Moon*, 230 S.W.3d at 804.

### 1.  *The Deed*

The grantor listed in the special warranty deed is "Herminia C. Vela"; the grantee is listed as "Herminia C. Vela Living Trust." The conjoined granting and habendum clauses state:

> Grantor . . . grants, sells and conveys to Grantee the property . . . to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever.

The warranty clause reads:

> Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and claim the same or any part thereof; by, through or under Grantor, but not otherwise and subject to the reservations from and exceptions to conveyance and warranty.

Antonio Jr. contends that the phrase in the Deed that grants to "Grantee [(the Trust)] and Grantee's heirs, executors, administrators and successors or assigns *forever*" indicates

Herminia's intent to make the trust irrevocable. (emphasis added). In support of this contention, he relies on three Austin court of appeals cases[1] as well as the concept of equitable title. However, these cases are distinguishable and the principle of equitable title does not apply.[2]

### 2. Case Law Relied Upon by Appellant

In *Butler*, the court held that a real property conveyance by way of general warranty deed to a trust did not make the trust irrevocable. *See Butler v. Shelton*, 408 S.W.2d 530, 534 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.). While the court highlighted the fact that the general warranty deed did not include the term "forever," the court noted, "It would be a strained and unwarranted construction to hold that the statutory form of general warranty in a trust deed has the effect of expressly making it irrevocable." *See id.*[3] Because the Deed executed by Herminia used statutory granting and warranty language, *see* TEX. PROP. CODE ANN. § 5.022 (West 2004), Antonio Jr.'s reliance on *Butler* is tenuous.

In *Austin Lake Estates*, a corporation conveyed property by quitclaim deed to "trustees, 'their heirs and assigns forever, *so that neither said corporation* [(as trust settlor and deed grantor)] *nor its successors and assigns shall have any right or title to or interest in such property, premises or appurtenances or any part thereof at any time hereafter*.'" *Austin Lake Estates*, 493 S.W.2d at 347 (emphasis added). The court held that the quitclaim deed created an irrevocable trust. *Id. Austin Lake Estates* is distinguishable from our case in at least three

---

[1] *See Sheffield v. Ellison*, No. 03-97-00050-CV, 1997 WL 334949 (Tex. App.—Austin June 19, 1997, no writ) (per curiam) (not designated for publication); *Austin Lake Estates Recreation Club, Inc. v. Gilliam*, 493 S.W.2d 343 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.); *Butler v. Shelton*, 408 S.W.2d 530 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.).

[2] We note that the grantee listed in the Deed was the Trust itself. We expressly distinguish this situation from an instance where trust beneficiaries (rather than a trust or a trustee) are specifically named as grantees in a special warranty deed.

[3] *See generally* TEX. PROP. CODE ANN. § 5.022 (West 2004) (providing the form of a covenant of general warranty including the phrase, "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said _____, his heirs or assigns *forever*." (emphasis added)).

respects. First, in *Austin Lake Estates*, the deed itself was the instrument that created the trust; in our case, the trust and the special warranty deed conveying the ranch to the Trust were separate instruments. *Cf. id.* Second, the quitclaim deed in *Austin Lake Estates* contained not only statutory conveyance and warranty language, but it also incorporated language limiting revocability by the settlor. *See id.* Third, the trust in *Austin Lake Estates* made no provision for the settlor to modify, amend, or use the principal of the trust; rather, the trust conveyed title to the trustees forever without the possibility of ownership or modification by the settlor. *See id.*; *see also Snyder v. Cowell*, No. 08-01-00444-CV, 2003 WL 1849145, at *5 (Tex. App.—El Paso Apr. 10, 2003, no pet.) (mem. op.) (emphasizing the significance of the extra-statutory language used in the granting clause in *Austin Lake Estates*). Conversely, the Trust created by Herminia provides: "This trust is revocable by Settlor during Settlor's life. Settlor shall have the power and right to amend, modify and revoke, in whole or in part, this agreement or any terms or provisions thereof by notice in writing delivered to the Trustees." Importantly, it also provides: "So long as Settlor shall live, there shall be distributed to or for the benefit of Settlor so much of the trust income and principal as Settlor shall from time to time direct in writing."

Finally, Antonio Jr. cites an unpublished opinion to support his contention that use of the word "forever" in the special warranty deed caused the trust to become irrevocable. In *Sheffield*, the instrument creating the trust was a warranty deed. *Sheffield v. Ellison*, No. 03-97-00050-CV, 1997 WL 334949, at *1 (Tex. App.—Austin June 19, 1997, no writ) (per curiam) (not designated for publication). The court noted that the use of the word "forever" in the combined granting and habendum clause, as well as the phrase "ever defend" in the warranty clause, indicated an intent on behalf of the settlor to create an irrevocable trust. *Id.* at *3. There are two notable distinctions between *Sheffield* and the present appeal. First, there was no separate trust

instrument in *Sheffield* that clearly indicated an intent on behalf of the settlor to create a revocable trust. *Cf. id.* at *1. Second, there was no applicable language that allowed the settlor to take the property out of the trust for the settlor's own use. *Cf. id.* at *1–3.

### a. The Deed Did Not Make the Trust Irrevocable

The plain language of the special warranty deed does not indicate that Herminia, as settlor of the trust, intended to make the Trust irrevocable.[4] *See Soefje*, 270 S.W.3d at 628–29. Because section 112.051(a) requires express language of irrevocability, we conclude that the use of the term "forever" in the special warranty deed did not cause the Trust to become irrevocable. *See Snyder*, 2003 WL 1849145, at *5 (noting that use of the word "forever" in a general warranty deed did not, by itself, create an irrevocable trust); *cf. Soefje*, 270 S.W.3d at 628–29 (noting that for an amendment to revoke a trust, the amendment must contain express language indicating a settlor's intent to revoke the trust).

### b. Equitable Title

Antonio Jr. also supports his contention that the trust became irrevocable by relying on the concept that equitable title in property immediately passes to a beneficiary when a trust is created. *See Cutrer v. Cutrer*, 334 S.W.2d 599, 605 (Tex. Civ. App.—San Antonio 1960), *aff'd*, 162 Tex. 166, 345 S.W.2d 513 (1961); *see also Shearrer v. Holley*, 952 S.W.2d 74, 78 (Tex. App.—San Antonio 1997, no writ). Thus, he contends that because his heritage trust was vested with equitable title in the Matambo Ranch at the time Herminia conveyed her 50% interest into the Trust by special warranty deed, he could not be divested of the interest by Herminia's amendment to the Trust.

---

[4] We note that the grantee listed in the Deed was the Trust itself. We expressly distinguish this situation from an instance in which trust beneficiaries (rather than a trust or a trustee) are specifically named as grantees in a special warranty deed.

This contention ignores the defeasible nature of interests held by the beneficiaries of a revocable trust. *See Cisneros v. San Miguel*, 640 S.W.2d 327, 330 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) (noting that a beneficiary's interest is defeasible—i.e., capable of being divested—when the trust's settlor revokes the trust or uses up the entirety of a trust's corpus); *see also Westerfeld v. Huckaby*, 474 S.W.2d 189, 193 (Tex. 1971). Because the Trust was revocable and susceptible to amendment or modification by Herminia as settlor, Antonio Jr.'s interest in the ranch under the Trust was defeasible. As Antonio Jr.'s interest in the trust was properly divested by Herminia's written amendment to the Trust, the trial court did not err in declaring GRC's total interest in the ranch was an 87.5% undivided interest and Antonio Jr.'s total interest in the ranch was 12.5%.

## CONCLUSION

The trial court did not err in granting summary judgment in favor of GRC Land Holdings, Ltd. and in denying Antonio Vela Jr.'s motion for summary judgment. Because GRC was entitled to summary judgment as a matter of law, we affirm the trial court's judgment.

Rebecca Simmons, Justice