# OPINION

No. 04-07-00347-CV

Marvin Jauer **SOEFJE**, Jr.,
Appellant

v.

Peggy Christine Soefje **JONES**, as Trustee of E. Susan Soefje,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 02-0711
Honorable Honorable Gus J. Strauss, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed: June 18, 2008

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This case stems from a will and a trust through which the personal and real property belonging to Susan Soefje ("Soefje") would be distributed to her daughter, Peggy Soefje ("Peggy"), and her son, Marvin Soefje ("Marvin"), upon her death. The case proceeded on two tracks — one in which the will was probated and one involving the trust. The district court properly held that most of Marvin's claims against Peggy are barred because of the preclusive

effect of the probate proceedings, and we affirm its judgment, in part. But because the district court misconstrued the trust, we also reverse, in part, and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case wound its way through a myriad of courts: county, district, and appellate. Each court crafted a decision and together these decisions ultimately led to the case before us. As a consequence, considerable time is spent dissecting those decisions and the problems they generated.

**A.      The Will and Trust**

In 1996, Susan Soefje executed a trust agreement that provided, among other things, for specific distributions of all her personal and real property to her children, Marvin and Peggy, upon her death. On the same day Soefje signed the trust agreement, she also executed a will leaving her entire estate upon her death to the trust.

The trust allocated Soefje's real property in Guadalupe County, on the south side of Interstate 10 ("I-10") to Peggy and the property on the north side of I-10 to Marvin. Before her death in 2002, Soefje executed a "third amendment" to the trust that "added" a paragraph by which Peggy would receive two tracts of land north of I-10. The parties dispute the effect of this amendment. Peggy claims the amendment revoked the entire gift in the original trust and, thus, she should receive the two tracts specifically mentioned *plus*, under the trust's residuary clause, half of the remaining property north of I-10. Marvin, on the other hand, asserts the amendment made specific distributions to Peggy but left intact the balance of the trust's gift of all real property north of I-10 to Marvin.

**B.      The Trust Lawsuit in District Court and the Will Lawsuit in County Court**

Less than three months after Soefje died, Marvin filed suit in district court against Peggy, in her capacity as trustee, seeking an accounting and Peggy's removal as trustee. At that time, no party had offered Soefje's will for probate.

In November 2002, Marvin applied, in the county court, to have Soefje's will admitted for probate. The will named Peggy and Marvin, in that order, as independent executors. Marvin alleged that Peggy was disqualified as an independent executor because she engaged in numerous acts of self-dealing and/or fraud in connection with Soefje's money and assets. According to Marvin, these acts gave rise to claims by the estate against Peggy, individually, that Peggy, as executor, would never bring. Accordingly, Marvin sought to be appointed sole executor and requested the issuance of letters testamentary. Peggy countered with an application to have the will probated as a muniment of title, asserting there was no need for administration of the will.

**C.      Consolidation of the Lawsuits in District Court**

In April 2003, based on the mistaken belief by the parties, the district court, and the county court that the probate case and the trust case could be consolidated in the district court, the district court entered a consolidation order. In the course of litigating all probate and trust issues, the parties announced their agreement to certain matters, including that a third party trustee/executor would be appointed to conduct a complete accounting of the estate and trust back to January 2001.

A few months later, in September 2003, Peggy filed a motion to approve her final accounting and for the final distribution and termination of the trust. During the hearing on this motion, Peggy argued the accounting was proper and complete and that Marvin failed to file any

specific objections to the accounting. Marvin contended that information about certain transactions was missing and that, in any event, a forensic accountant was needed to review the accounting.

PROCEDURAL BACKGROUND

**A.     Probate Matters to County Court**

Before any of the issues were resolved, however, the parties filed an agreed motion to vacate the consolidation order based on the trial court's lack of jurisdiction, and the probate matter was transferred back to the county court. The district court, however, retained jurisdiction over the trust matter.

In November 2004, the county court conducted an evidentiary hearing on the competing applications to probate Soefje's will (Peggy's application to probate the will as a muniment of title and Marvin's application to probate alleging the need for an administration). During this hearing, the parties litigated whether Peggy committed fraud upon the estate through criminal acts of misapplication of funds and should therefore be disqualified to serve as executor. Both parties examined witnesses and presented evidence.

**B.     The County Court Judgment**

The county court later signed an order probating the will as a muniment of title. This order included the statements that no administration of the estate is necessary and that Peggy "is qualified and not disqualified to serve [as Independent Executor]." The county court also rendered a separate final judgment that resolved the probate matters, re-consolidated the trust and probate proceedings, and disposed of all trust matters, including the approval of the accounting, the termination of the trust, and construction of the trust instruments' distribution of real property. The judgment further authorized Peggy, as trustee, to file deeds distributing Soefje's

real property such that Peggy and Marvin each took half of the property north of I-10 that was not specifically distributed to Peggy in the third amendment to the trust.

Based on the county court's judgment, Peggy filed a motion in the district court requesting entry of a final judgment. Marvin was not present at the hearing on this motion and subsequently filed a motion for new trial based on jurisdictional issues and his misunderstanding that he had received a continuance of the hearing on entry of judgment. The district court granted the motion for new trial.

## C.     Opinions of the Fourth Court of Appeals

Marvin pursued appellate relief from the county court's judgment through two avenues: (1) a petition for writ of mandamus alleging that the county court abused its discretion based on lack of jurisdiction; and (2) a notice of appeal from the judgment.

### *1.     The Mandamus Petition*

In the mandamus action, this Court held that the county court lacked jurisdiction over trust proceedings and conditionally granted mandamus, "but only with regard to those portions of the county court['s] . . . judgment that address trust matters." *In re Soefje*, No. 04-05-00140-CV, 2005 WL 1277754, at *4 (Tex. App.—San Antonio June 1, 2005, orig. proceeding). The opinion specifically noted the county court lacked jurisdiction over the approval of the trust accounting. Mandamus relief was granted as to any portion of the county court's judgment that "address[ed] trust matters." *Id.* The county court subsequently signed an order withdrawing and declaring null and void for lack of jurisdiction "any and all portions" of its judgment addressing trust matters. The order did not further specify which portions of the judgment were withdrawn and void.

### 2. *The Direct Appeal*

In Marvin's direct appeal, this Court affirmed the county court's judgment probating Soefje's will as a muniment of title. *In re Estate of Soefje*, No. 04-05-00030-CV, 2006 WL 927360, at *3 (Tex. App.—San Antonio April 12, 2006, no pet.). The Court also held that, because the county court, after the mandamus, declared the portion of the judgment authorizing Peggy, as trustee, to convey the tracts of land to herself was null and void, Marvin's issue with regard to such authorization was dismissed as moot. *Id.*

## D. Post- Appellate Litigation in the Trust Lawsuit

In the district court, the parties hotly disputed what issues remained to be litigated regarding the trust. During several pre-trial hearings, Marvin argued that the county court judgment's only effect was that the will was probated as a muniment of title and that the two appellate opinions voided the rest of the county court judgment. Peggy, on the other hand, argued that the county court proceedings disposed of the majority of the case and the only remaining issue before the district court was to render judgment for Peggy on all of Marvin's claims.

Marvin subsequently amended his district court pleadings to include claims against Peggy for breach of fiduciary duty, constructive fraud, conversion, fraud, and fraud in the inducement (the "money damage claims"). He also sought a declaratory judgment to construe the trust instruments to convey all of Soefje's real property north of I-10 to him, with the exception of the two specific parcels identified in the third amendment. Finally, he sought declaratory relief construing the power of attorney and the signature card agreement under which Peggy had made the transactions that form the basis for Marvin's money damage claims. Peggy filed an answer and a supplemental answer that included various pleas and motions, as well as

numerous affirmative defenses. Among these was a "plea in abatement" urging that the county court proceedings and judgment were dispositive of Marvin's money damage claims. Marvin then filed a motion for partial summary judgment. All pre-trial matters for both parties were set for hearing approximately three weeks prior to trial.

### E.     The District Court's Judgment

At the conclusion of the hearing, the district court declared its intent to enter a final judgment for Peggy. The court stated that the county court's judgment disposed of the issue of whether Peggy had committed fraud or engaged in self-dealing in Peggy's favor and that Marvin had nothing left as a basis for his lawsuit.

The district court entered a final judgment recognizing that the county court's judgment resolved all issues except "trust issues," approving the trust accounting prepared by Peggy, terminating the trust, and "confirm[ing] and approv[ing]" the deeds filed by Peggy after the county court initially rendered judgment. The judgment also "incorporated" and "adopt[ed]" the county court's initial judgment into the district court's judgment.

Marvin now appeals the district court's judgment. Peggy brings a cross-point claiming that Marvin violated the trust's "No-Contest Clause" thereby forfeiting any benefits received under the trust.

### STANDARD OF REVIEW

The judgment of the district court dismisses Marvin's money damage claims based on the court's apparent conclusion that those claims were precluded as a matter of law by the county court proceedings. We review this issue de novo. *See Karm v. City of Castroville*, 219 S.W.3d 61, 63 (Tex. App.—San Antonio 2006, no pet.). Construction of a trust is also a question of law

which we review de novo. *See, e.g.*, *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied).

### MARVIN'S RIGHT TO BE HEARD

Marvin asserts that the district court's rendition of judgment against him, by way of a pre-trial hearing and without a jury trial, violated his due process rights. The United States Constitution provides that a person shall not be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1; *see also* TEX. CONST. art. 1, § 19. "Fundamental to the concept of due process is the right to be heard." *Jordan v. Jordan*, 653 S.W.2d 356, 358 (Tex. App.—San Antonio 1983, no writ) (citing *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). The right to be heard includes the right to a full and fair hearing before a court having jurisdiction over the matter. *Id.* It also entails the right to introduce evidence and to examine witnesses. *Id.* A party's right to be heard further includes the right to have judgment rendered only after a trial on the merits. *Id.*

However, a party's right to due process does not mean that a case may never be disposed of before a trial. *Walden v. Affiliated Computer Sys., Inc.*, 97 S.W.3d 303, 322-23 (Tex. App.— Houston [14th Dist.] 2003, pet. denied); *Martin v. Dosohs I, Ltd.*, *Inc.*, 2 S.W.3d 350, 355 (Tex. App.—San Antonio 1999, pet. denied). While a motion for summary judgment is the preferred method for pre-trial disposal of a case in its entirety, a judgment may be rendered by way of a pre-trial hearing in limited circumstances where the record unmistakably demonstrates that there were only legal issues to decide and the parties had notice that the court would consider final disposition during the pre-trial hearings. *Walden*, 97 S.W.3d at 323 (holding that Texas Rule of Civil Procedure 166 authorizes a trial court to use the pre-trial conference to determine what fact

issues remain and to decide purely legal matters); *Dosohs I*, 2 S.W.3d at 355; *Unitrust, Inc. v. Jet Fleet Corp.*, 673 S.W.2d 619, 623 (Tex. App.—Dallas 1984, no writ).

We conclude that the district court did not err in using the pre-trial hearing to decide legal issues involving no fact disputes. The probate proceedings included an evidentiary hearing in the county court and two appellate decisions. The parties disputed what remained to be tried in the district court. Under these circumstances, the district court properly used the pre-trial hearings to sort through what fact issues remained and whether it could dispose of any, or all, of Marvin's claims on purely legal grounds. *Dosohs I*, 2 S.W.3d at 355 (trial court did not err in dismissing entire case at pre-trial hearing where viability of plaintiff's claims could be resolved as a purely legal issue); *see also Walden*, 97 S.W.3d at 323.

Whether the court correctly disposed of Marvin's claims is a different question, to which we now turn.

## JUDICIAL NOTICE

Most of the issues in this case involve the question of what the county court and appellate court proceedings resolved and what remained to be determined in the district court. Marvin contends that, because the court could not properly take judicial notice of the county court proceedings, the district court's judgment is not supported by any evidence.

The general rule is that a trial court may not take judicial notice of testimony from a previous proceeding unless the testimony is properly authenticated and admitted into evidence. *Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 161 S.W.3d 531, 539-40 (Tex. App.—San Antonio 2004, pet. denied); *Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 726 (Tex. App.— Corpus Christi 1996, writ denied). It is also generally true that pleadings are not summary judgment evidence and that simply attaching a document to a pleading does not make the

document admissible as evidence or dispense with proper foundational requirements. *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724-25 (Tex. App.—San Antonio 2004, no pet.).

However, court records, including testimony from other cases in other courts, may be acceptable summary judgment evidence. *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 698-99 (Tex. 1968); *see also Villareal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 605 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) ("The statement of facts and documentary evidence developed in a prior trial can properly be considered by the trial court in ruling upon a motion for summary judgment."); *Mowbray v. Avery*, 76 S.W.3d 663, 689 (Tex. App.—Corpus Christi 2002, pet. denied) ("Generally, a court may take judicial notice of records of its own or another court's records . . . when they are provided . . . to the court *in a form acceptable for summary judgment proceedings*, *i.e.* either sworn to or certified.").

Here, the record reflects that Peggy attached certified copies of records from the probate proceeding as part of her live pleading in the district court. Marvin neither filed an objection nor specially excepted to that pleading. Moreover, Marvin filed numerous pleadings in the district court to which he attached portions of the county court record and liberally cites the record from the probate proceedings in his briefing in this appeal.

The issue of the propriety of judicial notice does not turn in this case on the fact that Peggy asked the court to notice the record of the probate proceedings as part of her live pleading as opposed to a summary judgment motion or a trial on the merits. In this case, the parties hotly disputed the effect of the county court proceedings on what issues remained to be tried in the district court. Not surprisingly, both parties placed different parts of the county court record before the district court. Under these circumstances, the district court did not err in judicially noticing certified pleadings, documents, briefs, and testimony from the county court litigation.

*Murillo v. Valley Coca-Cola Bottling Co.*, 895 S.W.2d 758, 762 (Tex. App.—Corpus Christi 1995, no writ); *Villareal*, 677 S.W.2d at 605.

PRECLUSIVE EFFECT OF COUNTY COURT JUDGMENT – COLLATERAL ESTOPPEL

Peggy argues that the district court properly dismissed Marvin's claims because they are precluded as a matter of law by the county court proceedings. Marvin asserts that the county court proceedings should have no preclusive effect on the claims he raised in the district court.

Under the doctrine of collateral estoppel, a party asserting the preclusive effect of a prior proceeding must establish: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were in an adversarial posture in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *see also Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 847 (Tex. App.—San Antonio 1997, pet. denied) (noting that "the doctrine [of collateral estoppel] extends only to those matters . . . that were either expressly determined or necessarily determined in an adjudication").

Marvin and Peggy were in an adversarial posture in the county court proceedings. Thus, if they fully and fairly litigated a fact essential to the county court's judgment, the doctrine of collateral estoppel bars re-litigation of that fact issue in the district court proceeding and any claim dependent on a contrary finding on that fact issue fails as a matter of law. *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579-80 (Tex. 2001).

A.    **Money Damage Claims**

Marvin challenges the district court's dismissal of his money damage claims. He asserts in this appeal that the probate court's finding that Peggy was not disqualified was immaterial to the order admitting the will to probate as a muniment of title. We construe this as an argument

that the doctrine of collateral estoppel does not bar his claims in the district court because the facts litigated in the county court proceeding were not "essential" to the county court's order probating the will as a muniment of title.

We assume Marvin is correct that the county court did not need to reach the issue of whether Peggy was disqualified to serve as independent executor to have properly resolved the question of whether to probate the will as a muniment of title. However, in the county court proceeding, Marvin's pleadings alleged that, because Peggy misappropriated Soefje's property, an administration of Soefje's estate was necessary. Marvin contested Peggy's application to probate the will as a muniment of title on the same grounds, that an administration was necessary because of the same alleged misconduct. The county court conducted an evidentiary hearing which consisted, almost exclusively, of evidence and testimony regarding the propriety of Peggy's various transactions. Marvin thus had a full and fair opportunity to litigate his claim that an administration of the estate was necessary because of Peggy's alleged misconduct.

The county court's order probating the will as a muniment of title stated "that there is no fact or circumstance creating a need for administration; that there exists no necessity of administration."[1] The county court, in rejecting Marvin's application to probate the will and granting Peggy's application to probate the will as a muniment of title, implicitly found that Peggy committed no acts that would warrant the necessity of an administration. Marvin is estopped from litigating in the district court whether Peggy committed the same acts, which now form the basis for Marvin's money damage claims. *See Petta*, 44 S.W.3d at 579-80 (holding that collateral estoppel barred plaintiff's claims against police officer because fact essential to those

---

[1] The order also stated that Peggy "is qualified and not disqualified to serve" as independent executor.

claims was decided against plaintiff in prior criminal action). Therefore, the portion of the district court's order dismissing Marvin's money damage claims is affirmed.

**B.    Declaratory Relief Regarding Power of Attorney and Signature Card Agreement**

Marvin also requested declaratory relief construing a "springing power of attorney" and a bank signature card agreement between Soefje and Peggy. Marvin sought this declaration as support for his contention that neither of these agreements authorized Peggy to make the transactions that were litigated in the county court proceeding. Because of the preclusive effect of the county court judgment, the district court did not err in denying Marvin's request for declaratory relief regarding these agreements.

**C.    Accounting**

Marvin argues that the county court judgment cannot be given preclusive effect as to the trust accounting because the county court did not have jurisdiction to approve a trust accounting. Peggy agrees that the county court could not approve an accounting as to "trust matters."[2] Nonetheless, she asserts that the county court judgment still has preclusive effect as to Marvin's claims regarding the trust accounting because those claims are predicated entirely on his allegations of misconduct by Peggy.

As a beneficiary under the trust, Marvin was entitled to "a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later." Acts 1983, 68th Leg., ch. 567, art. 2, § 2 (current version at TEX. PROP. CODE ANN. § 113.151(a) (Vernon 2007)). However, all of Marvin's contentions about the impropriety of Peggy's final accounting revolve around Peggy's alleged misconduct. Because collateral

---

[2] *See Schuele v. Schuele*, 119 S.W.3d 822, 825 (Tex. App.—San Antonio 2003, no pet.) (holding that a county court at law exercising probate jurisdiction does not have jurisdiction to consider issues in a trust proceeding seeking an accounting as a matter incident to an estate).

estoppel bars Marvin from re-litigating the alleged misconduct, the district court did not err in approving the final accounting.

**THE TRUST AND THIRD AMENDMENT**

Marvin's motion for summary judgment sought a declaration that the trust and its third amendment unambiguously required distribution of all of Soefje's real property north of I-10, except those parcels expressly gifted to Peggy in the third amendment. Peggy claimed that Soefje's clear intent in the third amendment was to revoke the distribution in the original trust entirely and to cause those portions of the real property north of I-10, not mentioned in the third amendment, to fall into the trust's residuary clause. Under that clause, any property left over following distribution of property under the trust's particular gifts would be distributed as if Soefje died intestate. Under such an interpretation, Peggy would receive half of the property at issue and Marvin the other half.

## A.      Construction of the Trust

Construction of an unambiguous trust is a matter of law for the court. *See Eckels,* 111 S.W.3d at 694. In construing a trust, we are to ascertain the intent of the grantor from the language in the four corners of the instrument. *Id*. If the words in the trust are unambiguous, we do not go beyond them to find the grantor's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). Our focus is not what the grantor may have intended to write, but what words are actually used in the trust instrument. *Id.* If the words are unambiguous, extrinsic evidence is not admissible to show that the grantor had some other intent than that expressed in the clear words of the trust. *Id.*

In construing a trust, we must, wherever possible, give effect to all provisions such that no provision is rendered meaningless. *Eckels*, 111 S.W.3d at 694. Where the grantor executes

-14-

an amendment to a trust, the trust is not revoked unless the words used in the amendment clearly show the grantor's intent to revoke the trust. *See Harkins v. Crews*, 907 S.W.2d 51, 58-59 (Tex. App.—San Antonio 1995, writ denied) (will); *Harris v. Strawbridge*, 330 S.W.2d 911, 918 (Tex. Civ. App.—Houston 1959, writ ref'd n.r.e.) (trust). An intent to revoke the trust can be evidenced by reason of such inconsistent disposition of property between the trust and the amendment that both cannot stand. *Anderson v. Dubel*, 580 S.W.2d 404, 409 (Tex. Civ. App.— San Antonio 1979, writ ref'd n.r.e.); *Harris*, 330 S.W.2d at 918. In that circumstance, the amendment revokes the trust by implication, but only to the extent of inconsistency. *Anderson*, 580 S.W.2d at 409; *Harris*, 330 S.W.2d at 918. Revocation by implication is disfavored, but if the intent to revoke, whether in part or in whole, is manifested by the clear language of the amendment, such intent must be given effect even though no express language of revocation is used. *Harris*, 330 S.W.2d at 918. If we determine that the amendment revoked the trust by implication, we must give effect both to every part of the amendment and to every remaining part, if any, of the trust. *Anderson*, 580 S.W.2d at 409-10.

Here, the trust, in section 1(a) of Article Six, makes the following "specific distributions of real estate" upon Soefje's death:

> The Trustee shall make the following distributions of real estate to the named beneficiaries listed below:

> **1. Distribution of Real Estate to PEGGY CHRISTINE SOEFJE**

> The following real estate shall be distributed to PEGGY CHRISTINE SOEFJE, free of the trust:

> All real estate south of Interstate 10 recorded in Volume 683, page 801, of the Official Records of Guadalupe County, Texas.

> . . . .

**3. Distribution of Real Estate to MARVIN JAUER SOEFJE, JR.**

The following real estate shall be distributed to MARVIN JAUER SOEFJE, JR., free of the trust:

All real estate north of Interstate 10, recorded in Volume 683, Page 801 of the Official Records of Guadalupe County, Texas.

The third amendment to the trust declares that "[b]y this amendment, Trustor [Soefje] desires to modify and amend the existing trust agreement . . . ." Section 3 of the third amendment states:

The following Paragraph b. shall be added to Article Six Section 1, and shall read as follows:

**b. Specific Distribution of Real Estate to PEGGY CHRISTINE SOEFJE**

The Trustee shall make the following distributions of real estate to the named beneficiaries listed below:

**1. Distribution of Real Estate to PEGGY CHRISTINE SOEFJE**

The following real estate shall be distributed to PEGGY CHRISTINE SOEFJE, free of the trust:

5.00 acres, more or less, J.D. Clements Survey, Abstract 11, Guadalupe County, Texas, identified under Guadalupe County Appraisal District, Seguin, Texas, Account No. 2G0011-0000-36410-0-00; and

125.77 acres, more or less, J.D. Clements Survey, Abstract 11, Guadalupe County, Texas, identified under Guadalupe County Appraisal District, Seguin, Texas, Account No. 2G0011-0000-36400-0-00.

Each of these are more fully described in Distribution Deed from Elsie Mae Susan Soefje as Independent Executor of the Estate of Marvin Jauer Soefje, Sr. to Elsie Mae Susan Soefje executed March 6, 1996, and filed of record in the Deed and Plat Records of Guadalupe County, Texas.

The parties agree that Soefje owned three tracts of land located north of I-10, and that the two tracts described in the third amendment are part of the land north of I-10. Marvin does not

dispute that, under the clear language of the third amendment, Peggy is to receive these two tracts. That is, Marvin concedes that the third amendment is inconsistent with the trust as to those two tracts, and that the amendment revokes by implication the trust's distribution of those tracts to Marvin. *See Anderson*, 580 S.W.2d at 409; *Harris*, 330 S.W.2d at 918.

The issue is whether the third amendment revoked *the entire distribution* of real property to Marvin in the trust. We conclude that, as a matter of law, the third amendment and the trust are unambiguous and that they are inconsistent *only* as to the real estate specifically distributed to Peggy in the amendment. The third amendment clearly and unambiguously states that "[Soefje] desires to modify and amend the existing trust agreement" and that by this amendment, "[t]he following Paragraph b. *shall be added* to Article Six Section 1." (emphasis added) This is not the language of revocation.

To the contrary, by specifying that a paragraph 1(b) "shall be added" to section 6 article 1, which already has a paragraph 1(a) but no paragraph 1(b), the third amendment unambiguously shows the intent that the original distribution in paragraph 1(a) remains intact where not inconsistent with paragraph 1(b). *See Jim Wells County Appraisal Dist. v. Cameron Village, Ltd.*, 238 S.W.3d 769, 774 (Tex. App.—San Antonio 2007, pet. filed) (construing the plain meaning of phrase "in addition to" as used in a statute). Thus, pursuant to the unambiguous language in the trust and the third amendment, Marvin is entitled to a declaration that the remaining property north of I-10 should be distributed to him.

We hold that the district court erred in concluding that the third amendment revoked the distribution in the trust in its entirety. Accordingly, we reverse those portions of the district

court's judgment that are based on its construction of the trust and remand for further proceedings. [3]

## B.  Termination of the Trust

Marvin does not specifically challenge that part of the district court's judgment by which the trust was terminated.  He does, however, generally request that the judgment be reversed "on all issues," and asks to be appointed as trustee.  This is sufficient to raise the issue in this appeal. TEX. R. APP. P. 38.1(e).

The trust requires the trustee to distribute Soefje's real property immediately upon her death and her personal property "promptly."  The trust does not specify a particular date or event for its termination.  Where the trust does not specify the trustor's clear intent for a different termination date, the Texas Property Code allows for judicial termination of a trust on a petition by a trustee or a beneficiary if "the purposes of the trust have been fulfilled."  Acts 1985, 69th Leg., ch. 149, § 1 (current version at TEX. PROP. CODE ANN. § 112.054(a)(1) (Vernon 2007)); *see Frost Nat'l Bank v. Newton*, 554 S.W.2d 149, 154 (Tex. 1977) (courts should not speculate about whether purposes of trust have been fulfilled where trust specifies the termination event).

Here, Soefje's intent was, in part, to distribute all her property to Marvin and Peggy promptly after her death.  However, because of the county and district court's erroneous construction of the trust and the third amendment, Soefje's real property has not been distributed according to her clear intent as expressed in the trust instruments.  Under these circumstances, the purposes of the trust have not been fulfilled.  *See Newton*, 554 S.W.2d at 154 (holding that judicial termination of trust was improper because "one purpose of the trust[,] . . . the payment of

---

[3] We reject Peggy's assertion that Marvin's request for declaratory relief is an impermissible collateral attack on the county court's judgment.  As modified after the mandamus proceeding, that judgment was silent as to proper distribution of Soefje's real property.

the excess income to [beneficiaries], remains unfulfilled"). Therefore, the portion of the district court's judgment terminating the trust is reversed and remanded for further proceedings.

## "NO CONTEST" CLAUSE

In her cross-point, Peggy argues that Marvin violated the trust's *in terrorem*, or "No-Contest," clause and he, therefore, forfeited any benefits received pursuant to the trust. An *in terrorem* clause, in a will or a trust, typically makes the gifts in the instrument conditional on the beneficiary not challenging or disputing the validity of the instrument. *See, e.g.*, *In re Estate of Hamill*, 866 S.W.2d 339, 341 n.1 (Tex. App.—Amarillo 1993, no writ) ("The term, *in terrorem*, as applied to wills refers to a legacy given upon condition that the beneficiary will not dispute the validity or disposition of the will."). *In terrorem* clauses are designed to dissuade beneficiaries from filing vexatious litigation, particularly as among family members, that might thwart the intent of the grantor. *See Lesikar v. Moon*, 237 S.W.3d 361, 369-70 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Peggy claims that Marvin violated the trust's *in terrorem* clause by asserting that Peggy fraudulently induced Soefje into executing the trust agreement. Peggy argues that, by definition, an assertion of fraudulent inducement seeks to contest the validity of the instrument. Marvin argues that Peggy waived this cross-point both by not filing her own appeal, *see* TEX. R. APP. P. 25.1(a), and by not raising the claim in the district court. *See* TEX. R. APP. P. 33.1(a); *Opperman v. Anderson*, 782 S.W.2d 8, 11 (Tex. App.—San Antonio 1989, writ denied) ("The record does not reflect that the appellant raised this issue before the trial court; therefore, it was waived."). Peggy counters that because the first time Marvin sought to challenge the validity of the trust was on appeal, these rules of preservation are inapplicable.

However, Marvin's live pleading in the district court contains a claim for "fraud in the inducement" based on Peggy's alleged lack of intent to perform under the trust agreement at the time she entered into that agreement with Soefje. Accordingly, Peggy's assertion that an allegation of fraudulent inducement raises the issue of the applicability of the *in terrorem* clause, had to be raised before the trial court and perfected by notice of appeal. TEX. R. APP. P. 25.1(a); 33.1(a). She did neither and thus her cross-point on appeal is waived.

## CONCLUSION

This is the third time this case and these parties have appeared before this Court. Despite the district court's understandable desire for finality, we conclude that further proceedings in the district court are necessary.

The district court properly concluded that most of Marvin's claims were barred by collateral estoppel. However, the district court's construction of the trust and its third amendment was legally incorrect. Moreover, because the purposes of the trust have not been fulfilled, the trust should not have been terminated. Accordingly, the judgment of the district court is affirmed in part and reversed in part, and remanded to the trial court for further proceedings.

Rebecca Simmons, Justice