

# NUMBER 13-12-00638-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF TEROLLE K. LUTHEN, DECEASED

### On appeal from the County Court at Law No. 1
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Perkes
### Memorandum Opinion by Justice Perkes

Appellants Patrick James Luthen, Rachel Luthen, and Patrick James Luthen as next friend of Andrew Luthen[1] (collectively "appellants") appeal the trial court's order admitting Terolle K. Luthen's will and codicil to probate and authorizing letters of administration naming appellee Donald Ley[2] as the independent executor of the estate.[3]

---

[1] Appellants are the decedent's great grandchildren.

[2] Appellee is the decedent's son-in-law.

[3] Although appellants challenge in their "Issues Presented" whether "the trial court reversibly [erred] in entering the Order Admitting Will and Codicil to Probate and Authorizing Letters of

Specifically, appellants contend the trial court abused its discretion by appointing Ley as the personal representative because: (1) Ley is unsuitable under section 304.003 of the Texas Estates Code[4] based upon past misconduct involving Terolle K. Luthen's estate and her husband James M. Luthen's estate; (2) the trial court misconstrued the will regarding the appointment of co-executors; and (3) the trial court improperly denied appellants the right to cross-examine Ley and "effectively denied" appellants a hearing on their opposition and application. We reverse and remand.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2008, Terolle K. Luthen (decedent) died leaving a last will and testament and codicil. She was married to James M. Luthen at the time of her death.

On July 20, 2011, Patrick filed his "Application for Probate of Will and Letters of Administration with Will Annexed," together with a copy of a will and codicil. Patrick is the decedent's great grandson and sought appointment as administrator of the estate. Patrick states that the decedent left a valid written will, dated October 8, 1996, which was never revoked; and that the decedent made a codicil, dated September 2, 1999. In addition, his application states as follows:

---

Administration," their challenge appears to be limited to the appointment of Ley as personal representative of the estate.

In addition, the will does not provide for independent administration and there is no evidence in the record regarding whether all distributees have agreed to an independent administration. *See* TEX. EST. CODE ANN. §§ 401.001–.002 (West, Westlaw through 2013 3d C.S.) (formerly codified at TEX. PROB. CODE ANN. §§ 359.051–.054).

[4] Beginning in 2009 and finally concluding effective January 1, 2014, the Texas Legislature, as part of its topic-by-topic statutory revision program, repealed the Texas Probate Code and re-codified its provisions in the Texas Estates Code. The new codification is "without substantive change," and its purpose is to make the law "more accessible and understandable." *See* TEX. ESTATES CODE ANN. § 21.001 (West, Westlaw through 2013 3d C.S.). The governing law at the time of the events mentioned here was prior to the repeal and recodification of the Texas Probate Code, however, because the relevant law is unchanged, we cite to the current provisions of the Texas Estates Code herein and include cross-references to the prior law. *See, e.g.* TEX. EST. CODE ANN. § 304.003 (West, Westlaw through 2013 3d C.S.) (formerly codifed as section 78 of the Texas Probate Code).

2

9. The Will named JAMES M. LUTHEN to serve as Executor, but JAMES M. LUTHEN is deceased, having died on March 29, 2010.

10. The Will also named DONALD LEY to serve as Executor, but DONALD LEY failed to present the Will for probate for a period of thirty (30) days after the death of Decedent. Furthermore, DONALD LEY has filed an Application to be appointed as the Independent Executor of the Decedent's spouse's estate. To be appointed as the Executor of this estate would be a conflict of interest and would be detrimental to this estate as DONALD LEY has already attempted to classify the community property assets of the parties as the separate property of the Decedent's spouse.

11. The Will also named FIRST TRUST NATIONAL ASSOCIATION to serve as Executor, but FIRST TRUST NATIONAL ASSOCIATION failed to present the Will for probate for a period of thirty (30) days after the death of Decedent. Furthermore, it is believed that First Trust National Association does not have trust powers in Texas.

12. The Will does not name any other Executor.

On August 9, 2011, Ley filed an "Opposition to Application for Appointment of Administrator" challenging Patrick's application. Ley is the decedent's son-in-law. He states that he is named in the will as the executor of the decedent's estate. Ley further states that Patrick is unacceptable because he "has taken positions inconsistent with the wishes and desires of James M. Luthen" in the Estate of James M. Luthen; that the matter is currently in litigation; and that Patrick has a conflict of interest and is seeking to serve as the administrator of that estate. Ley requests that "the instrument offered by [Luthen] not be admitted to probate" and that "the letters testamentary not be issued pursuant to that instrument."

On February 29, 2012, appellants filed their "Original Petition for Declaratory Judgment and Other Relief." Appellants allege that they are the deceased's great grandchildren and are "devisees of Decedent's Estate and beneficiaries of Decedent's Trust." They requested a declaratory judgment "seeking a declaration as to what

3

particular monies/assets of the Decedent and her husband, James Luthen . . . are considered community property . . . [and further] that Decedent's Trust was underfunded. . . ." They also sought a declaration that the "decedent's community-property share [of certain income] was wrongly transferred into the James M. Luthen Trust, thereby underfunding the Terolle K. Luthen Trust." In addition, they asserted various causes of action against Ley for breach of fiduciary duty; breach of trust; constructive trust / resulting trust. Ley responded with a general denial.

On July 12, 2012, Ley filed his own ""Application for Probate of Will and Codicil and Issuance of Letters of Administration." Ley states that the decedent left a valid written will, dated October 8, 1996, which was never revoked; and that the decedent executed a valid codicil, dated September 2, 1999, which was never revoked, both of which were filed with the county clerk on September 1, 2011. In addition, Ley's application states as follows:

> 11. The Will and Codicil named JAMES M. LUTHEN to serve as Executor, but JAMES M. LUTHEN is deceased, having died on March 29, 2010. The will also named DONAL [sic] LEY to Applicant to serve without bond or other security as personal representative, but did not specify that Applicant would serve independent of court supervision, nor did Decedent specify that no action shall be had in any court in relation to the settlement of the estate other than the probating and recording of the Will and Codicil and the return of an inventory, appraisement, and list of claims of the estate.

On July 18, 2012, appellants filed their joint "Opposition to Application for Probate of Will and Codicil and Issuance of Letters Testamentary." They assert that the will provides that Ley would serve as a co-personal representative with the decedent's spouse and the First Trust National Association and that the will further states "if neither my spouse nor Donald Ley is able or willing to act as a Co-Personal Representative,

4

First Trust National Association shall act alone." They contend the face of the document shows that the decedent did not want Ley to act as a sole personal representative, but that the First Trust National Association does not have trust powers in Texas. They further contend: (1) Ley has no relationship of consanguinity with the decedent; (2) Ley intentionally failed to timely present the will for probate; (3) Ley's appointment would be a conflict of interest and detrimental to the estate because of actions taken; and (4) Ley breached his fiduciary duty.

On July 24, 2012, Ley filed his "Motion to Dismiss or in the Alternative for Continuance and Opposition of Patrick Luthen's Application to Probate Will of Terolle Luthen with Will Annexed." In his motion, Ley seeks a dismissal of Luthen's application for probate or, alternatively, a continuance of the July 24, 2012 hearing on Patrick's application to probate the will. Ley alleges that he is the named executor in the will and codicil, and that Patrick is not a named executor in either the will or codicil. Ley further alleges that he is first in line to serve as executor as a matter of priority pursuant to section 304.001[5] of the Texas Estates Code. *See* TEX. EST. CODE ANN. 304.001 (West, Westlaw through 2013 3d C.S.).[6]

On September 10, 2012, Terolle Ann Luthen, the decedent's daughter, filed an "Opposition to Donald Ley's Application for Probate of Will and Codicil and Issuance of Letters of Administration." She alleged that Ley is unsuitable to serve as administrator of the estate and is thereby disqualified under section 304.003[7] of the Texas Estates Code. *See* TEX. EST. CODE ANN. § 304.003 (West, Westlaw through 2013 3d C.S.).

---

[5] Formerly codified as section 77 of the Texas Probate Code.

[6] Although the Probate Hearing for Letters Testamentary was scheduled for August 28, 2012, it was rescheduled for September 11, 2012.

[7] Formerly codified as section 78 of the Texas Probate Code.

5

She further asserted that an independent administration is not authorized because neither the will nor codicil provides for an independent administration and because the distributees have neither agreed to such an independent administration nor agreed to Ley's appointment as administrator.

On September 11, 2012, appellants filed their "Objection to Donald Ley Serving as Executor/Administrator of the Estate of Terolle K. Luthen and Motion to Show that Dependent Administration Is Warranted." They contend that Ley is unsuitable to serve as executor/administrator because: (1) he failed to timely initiate the probate; (2) he has a conflict of interest with respect to adversarial matters involving the estate of James M. Luthen; (3) he committed a prior breach of fiduciary duty; and (4) the will requires co-executors, one of which must be a corporate executor, such as a bank. In addition, they seek a dependent administration of the estate pursuant to sections 401.002 and 401.003[8] of the Texas Estate Code because the will is silent regarding independent administration and because of a lack of agreement of distributes.

On September 11, 2012, the trial court held the probate hearing for letters testamentary. During the hearing, appellants' counsel apprised the court of the two competing applications and sought to present appellants' evidence first because Patrick's application was filed first in time. The court noted appellants' objection, but allowed Ley to put on his evidence first. Ley provided testimony to prove up the will.[9] He further testified that he is named in the will to serve as executor, and that he did not know of any reason why he should be disqualified from accepting letters of

---

[8] Formerly section 145 (e),(g) of the Texas Probate Code.

[9] Neither party challenges the will. Rather, the challenge concerns who is to be the executor of the estate.

6

administration. After Ley testified, the trial court stated "I'm not going to try this case, gentleman. I've already been there, done that."[10] The court thereafter refused to allow any further examination. Rather, appellants were reduced to putting on an offer of proof of all the cross-examination and evidence they would have submitted had they been permitted to move forward with cross-examination and trial.

The trial court thereafter entered its "Order Admitting Will and Codicil to Probate and Authorizing Letters of Administration." The trial court specifically found that the will dated October 8, 1996, and the codicil dated September 2, 1999, were valid, unrevoked, and entitled to probate. In addition, the trial court found that "Decedent named [Ley] to serve as Personal Representative without bond [and] that [Ley] is duly qualified and not disqualified by law to act as such and to receive Letters of Administration . . . ." The trial court ordered that Letters of Administration be issued to Ley, no bond or other security being required.

## II.   EXCLUSION OF EVIDENCE

Appellants argue "the trial court abused its discretion in applying the incorrect legal standard and also in depriving appellants their right to cross-examine [Ley] at the hearing and, as a result, appellants were effectively denied their right to a hearing in connection with their objection to the appointment of Ley." Appellants contend that the trial court's actions violate sections 304.001[11] and 304.003[12] of the Texas Estates Code, the open court's provision of the Texas Constitution, and due process. *See* TEX. EST. CODE ANN. §§ 304.001, 304.003 (West, Westlaw through 2013 3d C.S.). We agree.

---

[10] The record on appeal is devoid of any other probate trial in this matter.

[11] Formerly section 77 of the Texas Probate Code.

[12] Formerly section 78 of the Texas Probate Code.

7

## A.     Applicable Law

The trial court is granted broad discretion in determining whether an individual is suitable to serve as an executor or administrator. *See In re Guardianship of Bayne*, 171 S.W.3d 232, 235 (Tex. App.—Dallas 2005, pet. denied) (stating that rulings on probate applications are generally reviewed under the abuse of discretion standard unless the issue involves only a question of law); *In re Estate of Robinson*, 140 S.W.3d 801, 807 (Tex. App.—Corpus Christi 2004, pet. dism'd) (reviewing order finding person unsuitable to serve as executor under an abuse of discretion standard); *Olguin v. Jungman*, 931 S.W.2d 607, 610 (Tex. App.—San Antonio 1996, no writ) (same). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles, that is, whether the court acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* at 242.

If an independent executor named in a will comes forward within the statutory period for probating a will, offers it for probate, and applies for letters testamentary, the court has no discretionary power to refuse to issue letters to the named executor unless the named person is a minor, is incompetent, or is otherwise disqualified. *Alford v. Alford*, 601 S.W.2d 408, 410 (Tex. App.—Houston [14th Dist.] 1980, no writ); *see* TEX. EST. CODE ANN. § 304.001; *In re Estate of Gaines*, 262 S.W.3d 50, 55–56 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Monson v. Betancourt*, 818 S.W.2d 499, 500 (Tex. App.—Corpus Christi 1991, no pet.). When an applicant is among those named as

8

entitled to priority, the burden is on the opposing party to establish the applicant's disqualification.  *See Monson*, 818 S.W.2d 500.

Section 304.003[13] of the Texas Estates Code states that "[a] person is not qualified to serve as an executor or administrator if the person is . . . (5) a person who the court finds unsuitable."  TEX. EST. CODE ANN. ANN. § 304.003 (West, Westlaw through 2013 3d C.S.)).  In that regard, section 301.101[14] of the Texas Estates Code states:

> An interested person may, at any time before an application for letters of administration is granted, file an opposition to the application in writing and may apply for the grant of letters to the interested person or any other person.  **On the trial, the court, considering the applicable provisions of this code, shall grant letters to the person that seems best entitled to the letters** . . . .

*Id.* § 301.101 (West, Westlaw through 2013 3d C.S.) (emphasis added).  The Estates Code does not define "unsuitable," as used in section 304.003, and cases interpreting this provision have recognized that no comprehensive, discrete explanation exists delineating the attributes which make someone unsuitable under the Estates Code. *See Boyles v. Gresham,* 309 S.W.2d 50, 53 (Tex. 1958).  It would appear, therefore, that the legislature intended for the trial court to have wide latitude in determining who would be appropriate for the purpose of administering estates.  *See Dean v. Getz*, 970 S.W.2d 629, 633–34 (Tex. App.—Tyler 1998, no pet.) (citing numerous examples regarding the suitability of administrators).

---

[13] Formerly codified at TEX. PROB. CODE ANN. § 78.

[14] Formerly codified at TEX. PROB. CODE ANN. § 179.

**B.     Discussion and Analysis**

Appellants contend the trial court reversibly erred in appointing Ley as the personal representative of the estate.   In connection with this issue, appellants raise numerous sub-issues contending that Ley failed to timely apply to probate the will, that Ley improperly withheld estate assets, that Ley had a conflict of interest in serving as representative, and that Ley committed various acts of misconduct and breaches of fiduciary duty in connection with James's estate and a trust.   In addition to these arguments attacking the merits of the trial court's ruling appointing Ley, appellants also contend that the trial court erred because they were "effectively denied a hearing." Because we consider this due process argument to be determinative of this case, we address it first.

Appellants contend that the trial court denied them a hearing on their opposition to the appointment of Ley as personal representative because, inter alia, the trial court incorrectly applied the wrong standard of review based on his own personal opinions, he prohibited appellants from cross-examining Ley, and he essentially refused to "try the case."   Our review of the record shows the following occurred during the probate trial of this cause:[15]

> Mr. Villeda:  Okay.  Because obviously, I have a lot of comments with respect to the James estate, but I'll reserve that since we're on the Terolle estate; okay?  If that's okay with the Court?
>
> The Court:  I don't have a problem.  Let me tell you, so we're on the record with this: I've looked at everything and read everything in these documents that I've seen here, and I've seen a lot of stuff that looks exactly the same.  It looks like there's nothing there.  No big allegations.  That's why I've been looking at this going, you know, I read it on one Will; I

---

[15] In this colloquy, Mr. Villeda is the appellants' attorney; Mr. Gomez is Ley's attorney; and Mr. Fristee is appellant Terolle Ann Luthen's attorney.

read it in the other Will; I read it in the other document. Nobody is saying that Mr. Ley is a thief, or anything.

They're saying, you know, in this case, if I'm not mistaken, he didn't file it in time, 90 days. I don't think that rises to the level to have him taken out as executor in this case. I know that for a fact. And if I don't see something that's the color of your tie, that goes off in my head, then I don't think there's anything there. That's kind of what I've been looking at.

. . . .

Mr. Villeda: Your Honor, we need to stick to the Terolle estate. We can finish that, and then move on to the James estate.

The Court: Well, we'll do what I say we're going to do, very simple. We've got the Terolle estate. Are we ready to go with that?

Mr. Gomez: We are ready to go with that.

The Court: Let's get it done.

Mr. Villeda: Your Honor, could I make a comment on the Terolle estate?

The Court: Yes, sir.

Mr. Villeda: We have two applications, Your Honor. We have my client's application, Patrick Luthen; and of course, we have — Mr. Ley also filed an application. We filed ours first. I would ask the Court that we go first on ours.

. . . .

The Court: I'm not going to try this case, gentlemen. I've already been there, done that. Do we understand each other?

Mr. Fristoe: Judge —

The Court: I'll let you talk to the Court of Appeals on this one. If we have to come back and try it, I don't have a problem with it; but I'm not going to try it today. Do we understand each other? You got some questions, you ask them and let's get this done.

Mr. Villeda: He's going to ask questions; but Your Honor, honestly if —

11

The Court: No, no honestly. I'm telling you.

Mr. Villeda: Yes, Your Honor.

The Court: You go with the Court of Appeals. I've heard nothing from any lawyers, except for an English lesson I got one day here. Everybody has told me the same thing: This man seems to be an honorable man, and everybody was happy with what he's doing.

I'm not going to try this case. If the Court of Appeals tells me to try this case, we'll come back and try this case; but I'm not going to sit here for three hours and waste time when my opinion is my opinion. Do we understand each other?

Mr. Villeda: Yes, Your Honor. In fact, Your Honor, I'm just trying to make it easier for the Court. Since the Court, from my perspective, is making it very clear what the Court's position is, what I would suggest, instead of asking questions, is if the Court would just say look, I'm not going to allow any questions. Do your offer of proof. I do my offer of proof, then we take it up to the Court of Appeals.

The Court: That would be fine. That would be even better.

Mr. Villeda: But I would like it on the record —

The Court: I'm going to make a finding the person is dead; four years have not elapsed since the decease; the Court has jurisdiction and venue over the estate; citation has been served in the manner and length required by the Code, and that the person for who letters of testamentary or administration is sought is entitled thereto by law.

I'm going to admit the Last Will and Testament of Terolle K. Luthen. In accordance with her wishes, I'm going to appoint Mr. Ley here independent executor to serve without the requirements of bond.

Mr. Gomez: Judge —

The Court: Now you've got the floor. You can have a seat, sir.

Mr. Gomez: Judge, as far as the independent executor, we're asking the Court to appoint him and grant letters of administration with

the powers given to Mr. Ley under Will and Codicil. I have this particular —

The Court: Let me listen to these gentlemen first, then I'll decide that.

Go right ahead sir.

Mr. Fristoe: Judge McDonald, I believe that I have the right to cross-examine him, because I questioned his suitability under 78 of the Probate Code. What I'm asking the Court is to allow me to cross-examine him. If the Court is not going to allow me to cross-examine him, then I will submit an offer of proof, if the Court will allow that.

The Court: Yes. Do it. Do it.

Mr. Fristoe: I would first ask the Court to allow me to cross-examine Mr. Ley.

The Court: I'm allowing you to put up your offer of proof, both of you.

Mr. Fristoe: Does that mean that the Court is denying me my request —

The Court: I've already closed that case. That's done. I'm allowing you to do it, because of what Mr. Villeda said. I have no problem with that. Go right ahead.

Mr. Villeda That's based on the Court's refusal. Basically, the Court's answer to his question is yes, I am refusing —

The Court: Basically, I told you if you've got an offer of proof, put the offer of proof.

Mr. Fristoe: Judge, I appreciate that, but I need to know if the Court is telling me that I'm not going to be allowed —

The Court: Denied. Whatever —

Mr. Fristoe: My request is to cross-examine Mr. Ley.

The Court: Denied.

Mr. Villeda: The same with respect to me.

The Court: That's closed.

Mr. Fristoe: Just for the record.

13

Mr. Villeda:   [discussing additional argument and numerous exhibits]

Let me see, Your Honor—just to summarize, Your Honor, if the Court had allowed me to cross-examine Mr. Ley, I believe his testimony would be that yes, he did resign as both trustee and the executor of the James Luthen estate, because he wanted to purchase the shares.

He notified everybody of that resignation, and then because of the Fidelity refusal to jump in as administrator, he conferred with his lawyers, et cetera, and he decided that there was no conflict.  Initially, that's why he had resigned.  There was no conflict, and that's why he came back in.  Of course, he purchased shares in the mean time.

All those emails talk about conflict, et cetera that Rick Luthen had declared himself as trust protector in the mean time.  The idea was for him to resign, buy the shares, and then come back again.  He is aware that—he doesn't know whether the stock in L&M is community property.  He does admit—I think he will admit that the Luthens were residents of Texas; therefore, community property kicked in at some point in time.  What year, we don't know.  That they probably will deny, Your Honor, but there's a conflict between both estates as to underfunding in the Terolle estate, because all of it is in James estate.  Obviously, that's the position, Your Honor, that there was underfunding; that a lot of these properties are community properties; they should be allocated to the Terolle Luthen estate.

He will admit, and I think the cross-examination will show, that they were residents of Texas, again, at some point, Your Honor.

The Court:   Okay, sir.

Mr. Villeda:   That on Exhibit 101, Your Honor, he will—I think his testimony will be that it's a one plus million dollar CD.  If the Court looks at 101, the typeset is different.  It has James Luthen, and then the typeset of the revocable trust is put in there with a different typeset.  And I think when cross-examined, he'll say look, I don't know whether Terolle Luthen had—any of those monies were community property, so I don't know where they belong—any of those monies belong to her; and no, I didn't do any investigation on that.

14

He did sign it, Your Honor. He will admit that that's his signature on that particular document. It just says Don Ley. It doesn't say as trustee, or whatever. He will admit that he didn't probate the James—the Terolle Luthen estate for many years, Your Honor, and obviously delayed also in probating the James estate.

The Court: Anything else?

Mr. Villeda: Almost finished, Your Honor. He will admit that there's family disputes, obviously, not only with the children, but also Nancy Joe Wrather, Your Honor; and his intent is only to be the trustee for the trust for a short period of time. That's why the trust was amended. And obviously, the question would be does he see a conflict as administrator in any of these estates, Your Honor, and I assume he's going to deny there's any type of conflict, Your Honor.

I believe that it, Your Honor, but if I could confer with my assistant and other counsel just for a second, then I'll come back, Your Honor.

The Court: Go right ahead.

. . . .

The Court: They're admitted, every one of them. I'm going strictly by what the person wants in the Will. That's kind of what I learned. The Will says everything. The other little conflicts, don't like each other, whatever, the Will tells me what it is; and if it's signed well, and it looks like it is—I haven't heard anybody say anything bad about any of the family members. Everybody likes each other; it's just this issue has become something for them.

Anything else:

Mr. Villeda: The only other comment, Your Honor, is the offer of proof that I have presented also applies to the James Luthen estate, to expedite this.

The Court: They'll be admitted. Not a problem.

. . . .

15

Mr. Villeda:    Let's see, I believe those are the ones. Then on the Terolle estate, Your Honor, of course, our application has been denied, and I believe that's it, Your Honor.

Appellants timely filed a written challenge to Ley's appointment as personal representative. As such, they had the burden of showing that Ley is unsuitable to serve as independent executor of the estate and otherwise proving up the matters alleged in their pleadings and objections. They submitted several pleadings setting forth the basis of their argument including the absence of any relationship of consanguinity with the decedent; potential issues regarding the decedent's estate; potential conflicts of interest relating to James Luthen's estate; and alleged mismanagement and fiduciary breaches regarding James Luthen's estate. However, the record shows that the trial actually ended upon the conclusion of Ley's testimony on direct proving up the will. In short, appellants were not permitted to cross-examine Ley or otherwise admit any other evidence prior to the appointment of Ley as the personal representative.

The United States Constitution provides that a person shall not be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1; *see* TEX. CONST. art. 1, § 19. The Texas Supreme Court has recognized that the due course of law provision, at a minimum, requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995); *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Texas courts have also defined the minimum standard of due process as requiring the presence of the "rudiments of fair play." *See State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984); *Ray v. Tex. State Bd. of Pub. Accountancy*, 4 S.W.3d 429, 433 (Tex. App.—Austin 1999, no pet.). The right to

16

be heard includes the right to a full and fair hearing before a court having jurisdiction over the matter, the right to introduce evidence and to examine witnesses, and the right to have judgment rendered only after a trial on the merits. *Soefje v. Jones*, 270 S.W.3d 617, 625 (Tex. App.—San Antonio 2008, no pet.); *see Producer's Const. Co. v. Muegge*, 669 S.W.2d 717, 719 (Tex. 1984) (per curiam) ("The trial court erred in rendering judgment before Producer's had an opportunity to present evidence and rest its case."); *Turcotte v. Trevino*, 499 S.W.2d 705, 723 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.) (stating that due process "assures a full hearing" including "the right to introduce evidence at a meaningful time and in a meaningful manner and have judicial findings based on it").

A trial court is not authorized to render a judgment against a party to a lawsuit before that party has had the opportunity to present evidence on disputed issues of fact. *Turcotte*, 499 S.W.2d at 723; *see Jordan v. Jordan*, 653 S.W.2d 356, 358 (Tex. App.—San Antonio 1983, no writ); *Gibson v. Shaver*, 434 S.W.2d 462, 464 (Tex. Civ. App.—Tyler 1968, no writ); *Oertel v. Gulf States Abrasive Mfg., Inc.*, 429 S.W.2d 623, 624 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ). However, a party's right to due process "does not mean that a case may never be disposed of before a trial." *Soefje*, 270 S.W.3d at 625. In this regard, the trial court is vested with broad discretion regarding the admission and presentation of evidence. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *Striedel v. Striedel*, 15 S.W.3d 163, 166 (Tex. App.—Corpus Christi 2000, no pet.).

Applying these precepts to the instant case, our review of the record indicates that the trial court essentially rendered judgment against appellants without allowing

17

them the right to an evidentiary hearing. From our examination of the record, the trial court did not base its appointment on the evidence that appellants requested it to hear because it had already ruled on the appointment prior to the appellants' offer of proof. *See Soefje*, 270 S.W.3d at 625; *see also Producer's Const. Co.*, 669 S.W.2d at 719; *Turcotte*, 499 S.W.2d at 723. The trial court made that ruling abundantly clear to counsel. Although appellants were allowed to create an offer of proof, we do not believe that an offer of proof can replace what is, in essence, the entire trial on the issue of Ley's unsuitability to serve as executor. In conclusion, we hold that the trial court abused its discretion by precluding appellants from presenting evidence to meet their burden of proof. *See Perry*, 67 S.W.3d at 92; *Univ. of Tex. Med. Sch. at Houston*, 901 S.W.2d at 930. As such, they were fundamentally denied due process.

## C. Harmful Error

We next consider whether the exclusion of evidence was harmful and probably caused the rendition of an improper judgment. TEX. R. APP. P. 44. The offer of proof made by appellants is sufficient for review of this error. *See, e.g., Producer's Constr. Co.*, 669 S.W.2d at 717. In this regard, however, we do not consider the trial court's actions in allowing appellants to make an offer of proof sufficient to cure the error in this case, because appellants were neither allowed to put on evidence nor allowed to cross-examine appellee, and the trial court had clearly rendered its decision in advance of the offer of proof. When an appellant is not allowed to present any evidence at trial and the appellant has objected to this action, there is no necessity for an offer of proof or bill of exception. *See Safway Scaffold Co. of Houston, Inc. v. Safway Steel Prods., Inc.*, 570 S.W.2d 225, 229 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *see also In re*

18

*J.R.K.,* No. 06-10-00121-CV, 2011 WL 3242264, at *4 (Tex. App.—Texarkana June 24, 2011, no pet.) (mem. op). However, even a cursory review of appellants' pleadings and the offer of proof indicates that harmful error occurred.

In conclusion, the trial court's actions in preventing appellants from presenting evidence on their opposition constitutes an abuse of discretion warranting reversal. *See Downer,* 701 S.W.2d at 241–42; *Striedel*, 15 S.W.3d at 166. Because appellants' evidentiary issue is dispositive, we need not reach appellants' other issues on appeal. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

We reverse the judgment and remand the cause to the trial court.


GREGORY T. PERKES
Justice

Delivered and filed the
25th day of September, 2014.

19