AFFIRM; Opinion issued January 2, 2013.



In The

# Court of Appeals

## Fifth District of Texas at Dallas

No. 05-11-01121-CV

DENISE WOODHAM, Appellant

V.

GEARY WALLACE, ESTATE OF DEWEY K. WALLACE, KEVIN WALLACE,
DEBRA CURINGTON, ESTATE OF EDA P. WALLACE, MICHAEL TAYLOR,
INDEPENDENT EXECUTOR OF THE ESTATE OF EDA P. WALLACE, DALLAS
WHIRLPOOLS, LTD, AMERICAN WHIRLPOOLS, INC., U.S. WHIRLPOOLS, INC.,
Appellees

On Appeal from the Probate Court
Collin County, Texas
Trial Court Cause No. PB-001-949-06

## MEMORANDUM OPINION

Before Justices Francis and Murphy[1]
Opinion By Justice Murphy

Denise Woodham, formerly known as Denise Sue Murphy, appeals from a final judgment

denying her claims under The Wallace Revocable Trust established by her parents and under the Last

Will and Testament of her father, Dewey K. Wallace. In seven issues, Woodham argues that the

Trust is invalid due to certain ambiguities and the Will should be construed to convey a lake house

that was owned by a limited partnership in which her parents were the only general and limited

[1] Justice Joseph Morris was on the panel and participated at the submission of this case, but due to his retirement on December 31, 2012, from this Court, he did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

partners. We affirm.

## BACKGROUND

Dewey and his wife, Eda Wallace, had three children that survived them: Woodham, Kevin Wallace, and Debra Curington. On June 13, 1994, Dewey and Eda established the Trust and listed themselves as grantors. Article I of the Trust stated that "[t]he Trust shall have as its beneficiaries the Grantors, and the descendants of the Grantors from time to time living." The Trust specifically provided that Dewey and Eda had three surviving children and listed them as "Kevin Wayne Wallace, Denise Sue Murphy, and Debra Louise Curington." Article VIII, which provided for administration of a portion of the Trust known as the "Family Trust," specified that Woodham would receive "24(1/2)%" of the common stock of American Molds, Inc. and that any remaining undistributed portions of the Family Trust would be distributed "in equal shares to Kevin Wayne Wallace, Denise Sue Murphy and Debra Louise Curington."

Dewey and Eda amended the Trust three times before they died. The first amendment kept the language listed above stating that the beneficiaries of the Trust were the grantors and their descendants and listing "Denise Sue Murphy" as one of the surviving children. But the following sentence—written in all capital letters—was added to the end of that same paragraph: "THE GRANTORS HAVE INTENTIONALLY MADE NO PROVISION IN THIS TRUST AGREEMENT FOR THE USE OR BENEFIT OF DENISE SUE MURPHY, FOR REASONS BEST KNOWN TO THE GRANTORS." Article VIII was also amended to remove Woodham from the list of individuals receiving special stock distributions, and the clause regarding any undistributed portions of the Family Trust was modified to provide that any remaining undistributed portions would now be distributed "in equal shares to Kevin Wayne Wallace and Debra Louise Curington." Thus, Woodham was excluded by the amendment.

Approximately two years after the first amendment, Dewey and Eda amended the Trust again. Like the first amendment, the second amendment kept the language stating that the descendants of Dewey and Eda were beneficiaries of the Trust and specifically listed Denise Sue Murphy as one of the surviving children. But the language quoted above that excluded Woodham was amended further to exclude Woodham's descendants, as follows:

> FOR REASONS BEST KNOWN TO THE GRANTORS, THE GRANTORS HAVE INTENTIONALLY MADE NO PROVISION IN THIS TRUST AGREEMENT FOR THE USE OR BENEFIT OF DENISE SUE MURPHY, ANY OF THE DESCENDANTS OF DENISE SUE MURPHY OR ANYONE CLAIMING ANY INTEREST HEREIN BY VIRTUE OF RELATIONSHIP OF CONSINGUINITY [sic] OR AFFINITY WITH DENISE SUE MURPHY OR ANY OF THE DESCENDANTS OF DENISE SUE MURPHY.

The second amendment also added the following language prohibiting Woodham and her descendants from serving as trustees under the Trust:

> NOTWITHSTANDING ANYTHING CONTAINED IN THIS TRUST AGREEMENT TO THE CONTRARY, IN NO EVENT SHALL DENISE SUE MURPHY OR ANY OF THE DEASCENDANTS [sic] OF DENISE SUE MURPHY EVER BE PERMITTED TO SERVE AS TRUSTEE OR CO-TRUSTEE HEREUNDER AND THE SAME ARE HEREBY EXPRESSLY DISQUALIFIED FROM NOMINATION, DESIGNATION, APPOINTMENT OR SERVICE AS TRUSTEE HEREUNDER.

Finally, the Trust was amended a third time, but only as to Article VIII. Woodham again was excluded from the list of individuals receiving specific stock distributions. The amendment kept the conveyance of any undistributed portion of the Family Trust to Kevin and Curington, but added that if Dewey and Eda had no descendants then living, "then one-half (½) of the trust estate of the Trust then remaining undistributed shall be distributed to the heirs-at-law of Dewey K. Wallace (other than Denice [sic] Sue Murphy and her descendants) and one-half (½) to the heirs-at-law of Eda P. Wallace (other than Denise Sue Murphy and her descendants)."

Dewey passed away on February 7, 2006. Eda died approximately four years later, on March 31, 2010. Dewey's Will was filed on December 20, 2006 and admitted to probate on January 10, 2007. The inventory for his estate was approved on May 14, 2010.

Woodham sued, challenging the inventory and petitioning for construction of both Dewey's Will and the Trust. Regarding the Trust, the trial court concluded as a matter of law that the Trust was unambiguous, valid, and effective and that Woodham and her descendants were "excluded from any ownership, right, or interest in the corpus of the trust." Regarding the Will, the trial court concluded that Dewey did not convey the lake house to Eda. This appeal followed.

On appeal, Woodham argues that the Trust as originally created was valid, but the amendments introduced so many contradictions that they rendered the Trust uncertain and void. Woodham focuses on three uncertainties in the document. First, she argues that the Trust's beneficiaries cannot be identified with reasonable certainty. According to her, the Trust continues to designate her as a beneficiary even though it also states, with the amendments, that the Trust has no provisions for her use or benefit. She contends this language is uncertain and because a trust must identify its beneficiaries with certainty, the failure to do so in this case renders the Trust void.

Woodham also argues on appeal that the purpose of the Trust is now vague. She contends that the purpose of the Trust is clearly stated to be the financial well-being of Dewey and Eda along with their descendants. But the amended versions conflict with this purpose by providing for the special distribution of stocks at the death of both Dewey and Eda to individuals that are not their descendants. Finally, Woodham argues that the language designating who can become a trustee is vague and therefore it is impossible to determine "how the trusteeship would pass to Appellees [Kevin] and Curington who are claiming to be the current co-trustees."

# DISCUSSION

## *The Wallace Revocable Trust*

The rules of construction of trusts are well settled. *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Construction of a trust is a question of law that we review de novo. *Soefje v. Jones*, 270 S.W.3d 617, 625 (Tex. App.—San Antonio 2008, no pet.). The court's primary objective in construing a trust is to determine the intent of the maker. *See Hurley*, 98 S.W.3d at 310. If a trust is susceptible to a certain or definite meaning or interpretation, we will conclude it is unambiguous and construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Wright v. Greenberg*, 2 S.W.3d 666, 671 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). On the other hand, if a trust's meaning is uncertain or reasonably susceptible to more than one meaning, we will conclude it is ambiguous. *Coker*, 650 S.W.2d at 393–94. In interpreting an unambiguous trust instrument, we examine the four corners of the instrument to determine the settlor's intent. *Paschall v. Bank of Am., N.A.*, 260 S.W.3d 707, 710 (Tex. App.—Dallas 2008, no pet.). We harmonize all provisions and construe the instrument to give effect to all provisions so that no provision is rendered meaningless. *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied).

To create a trust by a written instrument, the beneficiary, the res, and the trust purpose must be identified. *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988). Woodham argues in her first issue that the Trust fails because its beneficiaries and purpose cannot be identified with reasonable certainty. She also argues in her third issue that the language specifying the means of trustee successorship is vague, and thus she questions whether Kevin and Curington should serve as co-trustees.

We first address whether the beneficiaries of the Trust can be reasonably identified. Woodham argues that the Trust undisputably lists the descendants of Dewey and Eda as beneficiaries and specifically lists her as one of those descendants. Thus, according to Woodham, she continues to be in the class of persons to benefit from the Trust. Regarding the Trust statement that there are no provisions for Woodham's use or benefit, she asserts the clause fails to convey that she is not a beneficiary. She argues the clause merely states that there are no "provisions" in the Trust for her use or benefit. She asserts that at the least, this language creates a conflict and raises uncertainty.

In construing the Trust, we will conclude it is unambiguous if we can give it a certain or definite legal meaning or interpretation. *See Coker*, 650 S.W.2d at 393. After stating that the Trust shall have as its beneficiaries the grantors and the descendants of the grantors, the document lists the surviving children of Dewey and Eda, including Woodham. Then, in bold, underlined, all-capitalized letters, the Trust states that "the Grantors have intentionally made no provision in this trust agreement for the use or benefit of Denise Sue Murphy . . . ."

A beneficiary is a person for whose benefit property is held in trust. RESTATEMENT (THIRD) OF TRUSTS § 3 (2003). To say a trust agreement has no provision benefitting an individual is thus equivalent to saying that person is not a beneficiary of the trust. The Trust paragraph must be read in its entirety. When read in this manner, the Trust is subject to only one reasonable interpretation: after naming Woodham as a surviving child of Dewey and Eda, the Trust explicitly and unambiguously excludes Woodham as a beneficiary. As suggested by appellees, this is a "carve-out" provision affecting the entire document, thereby eliminating the need to exclude Woodham as a descendant or beneficiary elsewhere in the Trust.

Woodham tries to create ambiguity by arguing that the language quoted above does not mean that she is not a beneficiary of the Trust; instead, the "plain meaning of the words in [this] clause

–6–

state that there are no <u>provisions</u> in the trust for the use or benefit of [Woodham]." According to Woodham, this language "compels a safari hunt of the trust to see whether there are provisions in the Trust for [Woodham's] use and/or her benefit, and there are." She claims the language is "advisory of what provisions are in the Trust, not definitive that Woodham is not a party of the Trust, thereby creating the necessary conflict for uncertainty." Except for saying that this clause "compels a safari hunt" and is "advisory," Woodham does not attempt to provide this Court with an alternative, reasonable interpretation of what this provision could otherwise mean. *See Coker*, 650 S.W.2d at 393–94 (trust is ambiguous when reasonably susceptible to more than one meaning). We conclude there is none.

Our decision is buttressed by the amendments to other portions of the Trust. First, the original document provided for a special distribution of stocks on the death of both Dewey and Eda and specifically listed Woodham as an individual receiving a special distribution; the later amendments modified this section, and Woodham was excluded from the list of individuals receiving a distribution. Second, the original document provided that any undistributed remainder of the Family Trust would be distributed in equal shares to Kevin, Woodham, and Curington; the amendments excluded Woodham and specifically listed only Kevin and Curington. This section was amended again to be even more specific: language was added that excluded Woodham and her descendants from receiving any undistributed remainder of the Family Trust in the event that both Kevin and Curington were deceased. Finally, the original document was also amended to exclude Woodham specifically from becoming a trustee. These provisions demonstrate an express intent to exclude Woodham from receiving any benefits of the Trust—in other words, she is not a beneficiary of the Trust.

After reviewing the Trust as a whole, including the amendments, we conclude the Trust agreement is unambiguous and that it was the expressed intent of Dewey and Eda to exclude Woodham as a beneficiary. We therefore overrule Woodham's first issue to the extent she argues the Trust lacks the requisite certainty as to the beneficiaries.

Woodham also argues in her first issue that the purpose of the Trust is vague because of contradictory language in different provisions. Specifically, she claims that "[t]he purpose declared in the Trust is for the financial welfare of the settlors and for the the settlors' descendents." Yet "[i]n direct conflict with [that purpose]," the third amendment states that "shares of stock are to be distributed to individuals who are not identified in Article I of the Trust as 'descendants'" and are not descendants of the settlors. She asserts that "[w]hen the Trust shifts away from its purpose, its purpose becomes uncertain," and the Trust therefore is void.

We must interpret the Trust to give meaning to all its provisions and to enact the intent of the grantors. *See Hurley*, 98 S.W.3d at 310; *Eckels*, 111 S.3d at 694. The Trust provisions designating distribution of certain stocks to individuals who were not descendants do not contradict the more general statement that the intended beneficiaries are the grantors of the Trust and their descendants. As appellees emphasize, this statement regarding the intended beneficiaries does not limit the Trust's purpose to benefitting only Dewey and Eda and their descendants. While benefitting the grantors and their descendants might be a primary purpose of the Trust, it is not exclusive. Instead, Dewey and Eda, as grantors of the Trust, chose to exclude one of their descendants as described extensively above. They also chose to distribute specific property to named individuals who were not their descendants, thus broadening the scope of distributions. Those intentions are clear, and a comparison of these provisions does not render the Trust vague.

–8–

Woodham also suggests the purpose of the Trust is uncertain because the Trust as amended designates her as a beneficiary but then states that there are no provisions for her use or benefit. We have already concluded that the Trust unambiguously excluded Woodham as a beneficiary. We thus conclude there is no uncertainty regarding the purpose of the Trust. We therefore overrule Woodham's first issue to the extent she argues the Trust's purpose is vague or uncertain.

Finally, Woodham contends in her third issue that Kevin and Curington did not become co-trustees under the Trust. Specifically, she argues that the succession of trustees was uncertain, and it was not clear that the trusteeship passed to Kevin and Curington. The Trust provides that:

> The Trustee shall have the power to resign and designate successor Trustees. If a vacancy in the trusteeship of a Co-Trustee shall not be filled pursuant to the power to designate successor Trustees, then the remaining Co-Trustee shall be the sole Trustee. If a vacancy in the Trusteeship of the Co-Trustees shall not be filled pursuant to their power to designate successor Trustees, then GEARY WAYNE WALLACE is nominated, designated and appointed to serve as successor Trustee. In the event he shall be unable or unwilling to serve as Trustee, KEVIN WAYNE WALLACE AND DEBRA LOUISE CURINGTON, or the survivor of them, are hereby nominated, designated and appointed to serve as successor Co-Trustees.

According to the appellees, Eda became the sole trustee when Dewey died. When Eda died, Geary Wallace became the sole trustee as provided for in the Trust. Geary declined to serve as trustee, so Kevin and Curington became co-trustees.

Woodham argues there is no evidence that Eda designated a successor co-trustee during her lifetime; she was therefore sole trustee. She argues that the Trust contradicts itself by stating that a vacancy in the trusteeship of the co-trustees "shall be filled through the appointment of Executor Geary to serve as successor co-trustee," and this provision "extinguish[ed] Eda as the sole Trustee." Woodham then argues that because this language is vague, "one cannot ascertain how the trusteeship would pass to Appellees [Kevin] and Curington who are claiming to be the current co-trustees."

We must interpret the Trust to enact the grantors' intent. *Eckels*, 111 S.3d at 694. Here, both the intent of the grantors and language of the Trust are clear. The Trust shows the grantors' intent that Geary was to serve as trustee in the event a trustee failed to designate a successor trustee, and Kevin and Curington were to become co-trustees if Geary could not serve or refused to serve. Both Woodham and appellees agree there is no evidence Eda designated a successor trustee or co-trustee. Geary therefore was designated as trustee. Geary refused to serve, so Kevin and Curington were appointed co-trustees. The current trustee arrangement is in accord with both the language of the Trust agreement and the grantors' intent. We overrule Woodham's third issue regarding the trusteeship.

Having overruled Woodham's first and third issues concerning the Trust, we need not address her second, fourth, and fifth issues regarding the use of a contingent testamentary trust as an option to maintain a valid trust or the use of extrinsic evidence to determine the intent of the grantors. *See* TEX. R. APP. P. 47.1.

*The Last Will and Testament of Dewey K. Wallace*

Woodham asks in her sixth issue that we construe Dewey's Will, which was signed the same day the Trust was first established. Specifically, she argues the trial court erred by using partnership law to determine that a lake house in the name of "Dallas Whirlpools, LTD" was owned by the partnership, not Dewey. She contends that Dewey expressed his intent in the Will to convey that house to Eda, which would result in the house being part of the inventory, appraisement, and list of claims in the probate court.

Dewey's Will provided that all of his estate not otherwise provided for was bequeathed to the Trust. Regarding his residences, the Will provided:

> I give, devise, and bequeath to my wife, if she shall survive me, for her own use in fee simple, all my right, title and interest in and to any residences which we shall own at my death and in which we shall then customarily reside all or any part of the year . . . .

Dewey and Eda used two houses: a residence in McKinney, Texas, which was owned by Dewey and Eda with the deed in their name, and a lake house and surrounding property on Lake Texoma in Kingston, Oklahoma with a deed in the name of Dallas Whirlpools, LTD. Dallas Whirlpools is a limited partnership with Dewey and Eda as its only general and limited partners. Based on the Will's express language and the deed for the McKinney house, Dewey's ownership in that house was bequeathed to Eda. Conversely, the lake house was owned by the partnership and could not be bequeathed outright to Eda under the Will.

Woodham argues that it was Dewey's intent to convey the lake house to Eda as evidenced by the fact that Dewey and Eda were the only owners of Dallas Whirlpools. In construing the Will, we apply the same rules of construction used for trusts. *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied). We must determine the intent of the maker as evidenced in the four corners of the document. *Eckels*, 111 S.W.3d at 694. The language of the Will is unambigous—Dewey conveyed to Eda "all [his] right, title and interest in and to any residences which [they] shall own at [his] death and in which [they] shall then customarily reside all or any part of the year . . . ." It is undisputed that Dallas Whirlpools held the deed for the lake house. Dallas Whirlpools was a limited partnership, and partnership property is owned by the partnership itself, not by the individual partners. *Marshall v. Marshall*, 735 S.W.2d 587, 594 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Dewey and Eda therefore did not own the lake house when Dewey died. Dewey could only convey property that he owned. Accordingly, we cannot construe the Will as conveying the partnership property. Woodham's sixth issue is overruled.

Woodham's seventh issue is a conclusory request that we render judgment in her favor. Having overruled her issues, we deny that request and affirm the trial court's ruling.

_____
MARY MURPHY
JUSTICE

111121F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DENISE WOODHAM, Appellant

No. 05-11-01121-CV      V.

GEARY WALLACE, ESTATE OF
DEWEY K. WALLACE, KEVIN
WALLACE, DEBRA CURINGTON,
ESTATE OF EDA P. WALLACE,
MICHAEL TAYLOR, INDEPENDENT
EXECUTOR OF THE ESTATE OF EDA P.
WALLACE, DALLAS WHIRLPOOLS,
LTD, AMERICAN WHIRLPOOLS, INC.,
U.S. WHIRLPOOLS, INC., Appellees

Appeal from the Probate Court of Collin
County, Texas. (Tr.Ct.No. PB-001-949-06).
Opinion delivered by Justice Murphy,
Justice Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**. It is **ORDERED** that appellee Geary Wallace, Estate of Dewey K. Wallace,
Kevin Wallace, Debra Curington, Estate of Eda P. Wallace, Michael Taylor, Independent
Executor of the Estate of Eda P. Wallace, Dallas Whirlpools, LTD, American Whirlpools, Inc.,
U.S. Whirlpools, Inc. recover their costs of this appeal from appellant.

Judgment entered January 2, 2013.


MARY MURPHY
JUSTICE